261 A.2d 844.

GEIGY CHEMICAL CORPORATION *vs.* GERALD L. ZUCKERMAN.

FEBRUARY 5, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an employer's petition to review an employee's total incapacity. This cause is before us on the employee's appeal from a decree of the Workmen's Compensation Commission affirming the trial commissioner's decree which suspended payment to the employee of weekly compensation payments.

The employer operates a chemical processing plant in the city of Cranston. In 1968, the employee worked at this plant. He was classified as a chemical operator. This is a job which involves the tugging, hauling and lifting of heavy objects. The employee worked a 40-hour week on a rotating shift basis—he would work two weeks from 8 a.m. to 4 p.m.;

the next two weeks from 4 p.m. to midnight; and two weeks from midnight to 8 a.m. On April 10, 1968, the employee, as part of his usual routine, was in the process of lifting a 50-pound bag of chemicals when he suffered a back injury which resulted in his hospitalization. The parties then entered into a preliminary agreement which described employee's average weekly wage as being $118.80 and called for the payment of weekly compensation benefits for total incapacity in the amount of $45. This agreement is the subject of the present litigation.

In June 1968, just about two months after he was injured, employee began to work for a furniture store as a combination bill collector and salesman. At this time, employee was still under the care and treatment of an orthopedic surgeon, Dr. Ralph F. Pike. Doctor Pike discharged the employee from any further treatment on July 11, 1968. There is evidence which shows that employee's average weekly earnings at the furniture store were in excess of the weekly wages he had received from petitioner.

While employee contends in his appeal that the full commission's affirmance of the trial commissioner's findings is riddled with error, he takes special issue with the commission's findings that he could return to work and perform all his regular duties as a chemical operator and that he had regained his earning capacity. We shall discuss the correctness of each of these findings as well as the other contentions made by employee.

# I
## The Employee's Physical Condition

Throughout this proceeding, the employee has expressed a fear that he would re-injure himself if he had to return to his job of lifting 50-pound bags of chemicals. The full commission gave little heed to this apprehension, but instead it declared that Dr. Pike's testimony demonstrated that employee could return to work for his employer and

do everything he had done before he hurt his back. It is our belief that this conclusion is based on a misconception of the physician's testimony.

Doctor Pike described employee's injuries as a "back strain and a probable ruptured intervertebral disk." Although the physician did testify that his patient could return to work as a chemical operator, he qualified this opinion substantially. This medical witness, whose expertise was unquestioned and who appeared as employer's witness, limited his opinion of the employee's physical fitness to the date he last examined him—July 11, 1968. This limitation may be found by examining the following portion of the transcript. The question was posed by the trial commissioner and the reply was Dr. Pike's:

Q. "On the basis of all the knowledge you know about your patient, is he able as of your last examination, based on everything you know able to do all the duties of the chemical work?"

A. "I would feel *as of the date of my last examination, on that particular time* that he could perform the work. I am not saying now as to how long he might be able to perform it, whether this would cause further trouble later on, that at that time he had recovered sufficiently where I think he could physically perform that work." (italics supplied.)

When asked if employee's back would be subject to an increased susceptibility of re-injury if he returned to his former job, the orthopedist replied:

"I would feel that there certainly is an increased susceptibility to injury to Mr. Zuckerman's back, were he to do heavy work requiring heavy lifting of this sort."

Furthermore, when pressed by employee's counsel as to whether employee's return to his former employment presented a "real danger" of his disk slipping again, Dr. Pike answered:

"I would feel that the type of work as a chemical operator would constitute such a danger, it was for this rea-

son *I encouraged him to find lighter work.*" (italics supplied.)

Doctor Pike's testimony is the only medical evidence on the record. It is clear that he restricted his opinion of employee's ability to engage in his former work on the day he examined him. The doctor would not estimate the duration of time employee could perform the admittedly arduous tasks of a chemical operator. There was, he said, an increased susceptibility and a real danger of re-injury to employee's back if he resumed his former job. The doctor also testified that he had advised employee to look for lighter work. We believe this portion of Dr. Pike's testimony, which the commission overlooked, to be of particular significance.

In *Builders Iron Works, Inc.* v. *Murphy,* 104 R. I. 637, 247 A.2d 839, we observed that the general rule is that one who has physically recovered from his injuries to the extent that he can resume his former employment without harmful consequences to himself is no longer entitled to receive weekly workmen's compensation payments. However, we pointed out in the *Murphy* case that this court is not prepared to say that an employee is, for the purposes of the Workmen's Compensation Act, able to resume his former duties if such a resumption would result in his hazarding his health.

Here the record shows something more than an employee's unfounded fear of re-injury should he go back to his former job. The employee had been advised by his doctor to seek lighter work. The doctor would not say whether employee with his history of a bad back would last five seconds, five hours or five years with his employer once he attempted to lift that first 50-pound bag. In the light of this testimony together with the physician's uncontradicted statements as to the increased susceptibility and real danger of re-injury to employee's back should he return to employer's plant as a chemical operator, we can find no legally competent evidence that employee has recovered

from the effects of his back injury to the extent that he is physically fit to resume his former occupation.

The full commission recognizes the *Murphy* case and attempts to distinguish it from the instant case upon the theory that there was evidence in *Murphy* that the employee there could not perform all his regular duties while, here, Dr. Pike testified that employee could, upon his return to work, perform all of his required duties. This difference matters little if any. It makes no difference that the employee in the instant appeal can perform all the duties of a chemical operator if to perform them will confront him with a real danger that his disk will be ruptured once more and another period of hospitalization will follow. It is unreasonable, unjust, and utterly unrealistic to force an employee, who has been the recipient of weekly compensation payments, to return to a job where concededly competent medical testimony shows that such a return would create a real risk that the employee would once again be disabled. Our law does not require a worker to endanger himself in order to prove that he is entitled to workmen's compensation. Any other view would do violence to the humanitarian motives which led to the enactment of the Workmen's Compensation Act.

We must therefore hold that the commission erred when it found that employee was physically fit to return to employer's plant and carry out the normal activities incident to his former job.

## II
### The Employee's Earning Capacity

Having decided that employee's physical condition will not allow him to resume his regular work as a chemical operator, we must now turn to the question of whether he may continue to receive weekly compensation payments in the light of his post-injury earnings. This question is all-important because in this state workmen's compensation is

not paid to a worker because of his physical disability but because he has, as a result of his injury, suffered an impairment of his earning capacity. *Peloso, Inc.* v. *Peloso,* 103 R. I. 294, 237 A.2d 320; *United Wire & Supply Corp.* v. *Frenier,* 87 R. I. 31, 137 A.2d 414. If there has not been a diminution of earning capacity, a worker may not receive workmen's compensation benefits even though he has sustained a permanent and lingering injury. *Weber* v. *American Silk Spinning Co.,* 38 R. I. 309, 95 A. 603. As this court said in *Peloso, supra*:

"'* * * whether or not compensation payments should continue to be paid an injured employee is determined by ascertaining the degree to which the employee's earning capacity has been restored. When it is shown that the employee has regained his earning capacity to at least that stage at which it was before he sustained his disability, the act demands that compensation payments be terminated."

Where it is demonstrated that an employee's post-injury earnings are equal to or greater than the amount he earned prior to his injury, this court has held that under the law of this jurisdiction, it shall be conclusively presumed that the employee's earning capacity has been fully restored. This rule applies even though the employee has returned to a different type of work. *Universal Winding Co.* v. *Parks,* 88 R. I. 384, 148 A.2d 755.

The employee recognizes the principles we have just enumerated but claims that they are not relevant to him because of his work schedule. He points out that at Geigy he worked on a revolving-shift basis. The employee concedes that, during the hours between 8 a.m. and 4 p.m., he could not be in two places at the same time. He could not be in the furniture store at the same time he was due to report for work at Geigy. Nor could he appear simultaneously at those two locations during the period between the 4 p.m. to midnight shift when both establishments were opened for business. The employee claims, however, that if physically

able, he could have worked the midnight shift and a portion of the 4 p.m. to midnight shift at Geigy. He therefore asserts that he does have a loss of earning capacity—total for those weeks he was scheduled for the midnight shift and partial for the weeks of the so-called "swing shift."

While we have serious doubts that employee, even if he was physically able, would have the stamina to work for any considerable period of time a 40-hour week as a chemical operator and an additional 51-hour week in the furniture store, we must fault employee's novel theory of his lost earning capacity for a more basic reason—and that is the purpose and philosophy behind our Workmen's Compensation Act.

The primary object of workmen's compensation is to provide economic assistance to an employee who is injured and thereby suffers a loss of earnings. The Compensation Act was intended to impose upon the employer the burden of taking care of the casualties occurring in his employment, thus preventing the injured employee from becoming a public charge. *Rosa* v. *George A. Fuller Co.*, 74 R. I. 215, 60 A.2d 150. Workmen's compensation payments were never intended to provide general health and accident insurance or to afford full compensation for injuries suffered from one's employment. *DeLallo* v. *Queen Dyeing Co.*, 73 R. I. 325, 56 A.2d 174. The Workmen's Compensation Act is humane legislation designed to afford a modicum of economic shelter to one who has sustained an industrial injury.

The weekly compensation benefit paid an employee was never intended as something being paid for nothing. The benefit received is a substitute for the weekly salary an employer would have paid his employee but for the injury. *Masi* v. *A. Gasbarro & Sons, Inc.*, 103 R. I. 136, 235 A.2d 341. No matter what the rule may be in other jurisdictions, the sine qua non of earning capacity, so far as the Rhode Island Workmen's Compensation Act is concerned, is the

amount of the post-injury earnings of a worker—if they are equal to or in excess of his pre-injury earnings, then the worker is no longer entitled to receive weekly monetary benefits. This is true even though he might have time to work a second job, the duties of which he is physically able to perform notwithstanding his original work-connected injury. Even though we must commend employee for his industriousness and diligence in securing work at the furniture store, he may not reap a financial bonanza under the Compensation Act because of his unique employment situation. Here Zuckerman's earnings in the furniture business show that he had in fact regained his earning capacity. There is, therefore, evidence in the record to support the full commission's finding that Zuckerman's incapacity for work had ceased by reason of his post-injury earnings.

## III
### The Employee's Other Contentions

The last portion of employee's appeal is devoted to certain rulings made by the trial commissioner which were upheld by the full commission.

As the hearing before the trial commissioner was about to begin, employee made a motion that employer be prohibited from going forward on its petition for review because it had failed to reimburse him for the costs of a hard mattress and box spring allegedly purchased on the recommendation of Dr. Pike. This motion was denied, and employee now alleges that the denial was incorrect.

There is no question that pursuant to the provisions of G. L. 1956, §28-33-5, as amended by P. L. 1968, chap. 131, sec. 1, an employer is required to provide apparatus that is necessary for the cure, rehabilitation or relief of an injured employee. We have ruled that, under this section, an employer is required to supply a certain type of mattress if it is recommended by the attending physician. *Izzi v. Royal Electric Corp.*, 100 R. I. 380, 216 A.2d 363. However, be-

fore an employer's liability attaches, he is entitled to a hearing before the commission on whether the cost of a purchased article is reasonable and whether such item is necessary for the cure, rehabilitation or relief of his employee. Here employee had never filed a petition for payment of the mattress and box spring. Accordingly, no order had been entered by the commission directing employer to pay for these items. There was no default by employer, and it was entitled to proceed with its petition. The employee should have filed a petition for payment. His attempt to raise issues relative to the procurement of the box spring and mattress was tardy and the commission properly refused to consider this phase of employee's appeal.

The employee also complains about the language in the trial commissioner's decree which was affirmed by the full commission. The decree orders the suspension of "all payment of benefits" to the respondent-employee. The employee interprets this portion of the decree to mean that any payment for future necessary medical services is also placed in a state of suspension. While the language in the decree may be imprecise, the employee's fear as to this phase of his appeal is completely unfounded. When the word "benefits" was used in the decree, it is obvious that reference was being made to the weekly compensation benefits paid to disabled employees under the provisions of §28-33-17 and §28-33-18, as amended by P. L. 1968, chap. 92, sec. 1. As noted by the full commission, §§28-33-5 and 28-33-8 provide that reasonable and necessary medical services be furnished at the employer's expense even though he is no longer liable for the payments of weekly benefits.

Finally, there is no merit to employee's contention that he should have been allowed to show that he had never been offered work with Geigy at a job of lighter work than the one he had at the time he was injured. Even though employer alleged in its petition that its employee could "return

to light selected work," the complete thrust of the hearing before the trial commissioner was to show that employee was physically able to return to his former occupation. There was no evidence that the employer offered employee anything but his former job as a chemical operator. Any attempt by employee to show that he had not been offered a different type of work was, therefore, completely immaterial.

The employee's appeal, insofar as it relates to the commission's finding that he has recovered from the effects of his injuries to the extent that he is able to return and perform all the duties of his work as a chemical operator is sustained, and the cause is remanded to the Workmen's Compensation Commission for a modification of its decree in accordance with this opinion. The appeal is otherwise denied and dismissed, and the final decree, when modified, is affirmed.

*Francis V. Reynolds, Bernard W. Boyer,* of counsel, for petitioner.

*Martin Malinou,* for respondent.