359 A.2d 45.

LUCIEN J. ROBIDOUX *vs.* UNIROYAL, INC.

JULY 2, 1976

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This is an appeal by an employee from a decree of the Workmen's Compensation Commission affirming a decree of a trial commissioner denying and dismissing so much of the employee's petition for review as seeks weekly compensation benefits for incapacity returning by reason of the effects of an earlier compensable injury. The commission grounded its rejection primarily on a finding that the employee failed to prove a loss of earning capacity.

No more than a brief reference to the pertinent facts is required. On May 5, 1960, the employee, while em-

ployed by Uniroyal, Inc., respondent, sustained a compensable injury to his left wrist and left ankle.[1] Since then he has received compensation benefits during several periods. Most recently, payment of such benefits was decreed on March 18, 1971 for the period commencing on July 15, 1970 and terminating on September 30 of that year. Upon the employee's return to employment following that period of incapacity, he worked first for an employer other than respondent, then was self-employed, and in September 1973 obtained employment with the Woonsocket Redevelopment Agency (Agency) which continued until March 19, 1974.

While employed by the Agency, the employee continued to be troubled by his left leg. On January 2, 1974, he was hospitalized and, in an attempt to remedy a condition directly referable to the original injury, surgery was performed on that limb. The surgery was apparently at least in part successful and the employee was discharged from the hospital on January 13, 1974. He did not return to work until January 25, 1974, and then, instead of working 8 hours a day as he had prior to being hospitalized, he limited his workday to 2 hours in the morning and 2 hours in the afternoon. This working regime continued until March 19, 1974, when, acting on his physician's advice that he should stop work, he requested and received a leave of absence. Then, 3 days later, he asked to be laid off for lack of work and that request was also granted.

During the interval between his hospital admission and his job termination, the employee received from the Agency a weekly payment of $200. That payment was

---

[1] The amount of the employee's entitlement to weekly benefits is determinable by the compensation law then in effect. *Cipriano* v. *Personnel Appeal Bd.*, 114 R. I. 141, 144, 330 A.2d 71, 73 (1975); *Harmony Serv., Inc.* v. *Mason*, 111 R. I. 85, 86 n.1, 299 A.2d 162, 163 n.1 (1973); *Davol Rubber Co.* v. *Lafoe*, 108 R. I. 499, 509, 277 A.2d 128, 133 (1971).

in excess of the employee's preinjury average weekly wage. According to his undisputed and uncontraverted testimony, as construed by the trial commissioner, it consisted in part of accumulated sick leave and vacation pay to which the employee said he was entitled under his employment agreement with the Agency.

Based upon these facts the commission ordered Uniroyal, Inc. to pay all medical, hospital and related charges incurred by the employee subsequent to January 2, 1974 for the treatment of his injury as well as fees to the employee's medical witness and attorney, but rejected the employee's claim for weekly compensation benefits. That rejection appears to relate only to the claim to benefits for the period ending March 19, 1974, and not to touch that claim insofar as it seeks benefits subsequent to that date.* We are, of course, aware of the commission's indicated dissatisfaction with the testimony, medical and otherwise, that the employee was physically disabled after that date, but it neither translates that dissatisfaction into a specific finding nor otherwise definitively articulates it as a reason for denying post-March 19, 1974 weekly benefits. Whether and how it intended to dispose of that issue are, therefore, open questions whose resolution is better left to the commission on the remand which in the view we take of this case will in any event be required.

We therefore confine our discussion — as did the parties during oral argument — to whether weekly benefits should have been ordered for the period prior to March 19, 1974. While the commission in its decision refers to the undisputed and uncontroverted testimony that the weekly payments received by the employee during the period ending

---

*The employee's petition for review seeks weekly compensation benefits for total incapacity from January 3, 1974 to January 23, 1974, for partial incapacity from January 23, 1974 to March 19, 1974, and for total incapacity since March 19, 1974.

on that date were in part for accumulated sick and vacation leave, it did not come to grips with whether that portion of those payments should enter into the calculation of the recipient's earning capacity. Instead, it proceeded as if the nature of those payments lacked any legal significance and, on the question of the employee's earning capacity, it found as a fact that the $200 weekly payments received by the employee during that period exceeded his average weekly preinjury earnings and were not intended as gifts or gratuities. Then, based upon those findings and in reliance on the rule enunciated in *Weber v. American Silk Spinning Co.*, 38 R. I. 309, 95 A. 603 (1915),[3] it concluded that the employee, although admittedly disabled during at least a portion of that period, had not sustained a loss of earning capacity and was therefore not entitled to receive weekly compensation benefits.

The flaw in the commission's conclusion is that it assumes an erroneous view of the concept of *earning capacity*. Definitionally that term connotes "an ability or a power to earn rather than wages actually received * * * ," *Trzoniec v. General Controls Co.*, 100 R. I. 448, 451, 216 A.2d 886, 888 (1966), or the "* * * power or ability to earn income by the application of one's individual talents — be they physical or mental," *Peloso, Inc. v. Peloso*, 103 R. I. 294, 298-99, 237 A.2d 320, 324 (1968).

We applied these concepts in *Trzoniec*, where we held that wages paid an employee so physically handicapped

_____

[3]In that case the court said:

"The petitioner seems to overlook the fact that Section 11 of Article II of Chapter 831 is only intended to furnish compensation for loss of earning capacity. Without such loss there is no provision for compensation in the section, although even permanent physical injury may have been suffered, and the burden is upon a petitioner to show this loss and, with reasonable definiteness, its amount." *Weber v. American Silk Spinning Co.*, 38 R. I. 309, 315, 95 A. 603, 605 (1915).

by a work-related injury as to be precluded from performing any work whatsoever would not reflect his actual earning capacity, if paid as a voluntary gesture of gratitude for past services rendered and not intended to be in lieu of compensation. In that situation, of course, the burden was on the claimant to explain away his post-injury earnings as an unreliable basis for estimating his earning capacity. *Peloso, Inc.* v. *Peloso, supra* at 299, 237 A.2d at 324; *see* 2 Larson, *Workmen's Compensation Law* §57.21 at 10-37 (1976).

The problem was somewhat different in *Peloso* because there the employee, who was only partially disabled, claimed that upon his return to work he performed only minimal services not commensurate in value with the compensation he received therefor. In those circumstances we said that to establish a diminished earning capacity required a showing of what portion, if any, of the regular stated payments were intended as wages or salary for work performed, what as gratuity, and what in lieu of compensation.

We see no reason why the same considerations which in the *Trzoniec* and *Peloso* cases prompted us to say that wages might not reflect earning capacity should not also be available in this case to afford the employee an opportunity to establish to what extent, if at all, the payments he received should be excluded in determining his earning capacity. Just as we recognized in *Trzoniec* and *Peloso* that wages paid out of sympathy and in consideration of long service do not reflect actual earning capacity, so, too, is it now our judgment that the accumulated sick or vacation leave payment which the employee may have earned by virtue of his past services and which would otherwise be available to him when not suffering from a work-incurred disability might be lost forever if required to be included in the computation of his earning capacity.

We cannot believe that the Legislature so intended. *Temple* v. *Pennsylvania Dep't of Highways*, 445 Pa. 539, 544, 285 A.2d 137, 140 (1971); *see France* v. *City of New Orleans*, 92 So.2d 473, 479 (La. 1957); *Knaszak* v. *Buffalo Forge Co.*, 15 App. Div.2d 971, 225 N.Y.S.2d 600 (Sup. Ct. 1962).

Obviously this case was neither heard nor decided under the standards we announce today. Hence, it is understandable why the commission failed to make some of the factual determinations essential to an application of those standards and why the record is devoid of competent evidence on some of the vital issues. The case must therefore be sent back to the Workmen's Compensation Commission for a hearing and for application of the newly announced standards insofar as pertinent in determining the extent of the employee's incapacity, if any, both prior and subsequent to March 19, 1974. *Banasik* v. *Tupper Co.*, 109 R. I. 192, 198, 283 A.2d 272, 275 (1971); *Saccoccio* v. *Kaiser Aluminum & Chem. Corp.*, 107 R. I. 53, 62, 264 A.2d 905, 909-10 (1970); *Catoia* v. *Eastern Concrete Prod. Co.*, 84 R. I. 402, 406-07, 124 A.2d 864, 866-67 (1956).

The petitioner's appeal is sustained in part, the decree appealed from is reversed to the extent indicated, and the case is remanded to the Workmen's Compensation Commission for further proceedings in accordance with this opinion.

*Abedon, Stanzler, Biener, Skolnik, & Lipsey, Richard A. Skolnik*, for petitioner.

*Carroll, Kelly & Murphy, Ambrose W. Carroll*, for respondent.