Susan COLE

v.

DAVOL, INC.

Fred CABRAL

v.

DAVOL, INC.

Veneranda Maria CARVALHO

v.

DAVOL, INC.

Nos. 95–64–M.P., 95–492 M.P. and 94–585 M.P.

Supreme Court of Rhode Island.

July 19, 1996.

John Harnett, Providence, for Petitioner

John Earle, for Respondent.

## OPINION

FLANDERS, Justice.

■ We granted writs of certiorari on these consolidated matters to decide whether an employer can reduce workers' compensation payments by the amount of vacation-pay benefits paid during a scheduled plant shutdown to partially incapacitated employees who have returned to light-duty work. Because these vacation benefits are payable to employees on the basis of their past service to the employer, and therefore do not relate to any present lost earning capacity, we conclude that they cannot be credited against the amount of workers' compensation payments owed to the employees during the shutdown.

1. The calculation of lost earning capacity due to any on-the-job injury is critical because workers' compensation is provided to employees on the basis of any resulting diminution in earning capacity and not because of any physical injuries sustained. *See, e.g., Geigy Chemical Corp. v. Zuckerman,* 106 R.I. 534, 539–40, 261 A.2d 844, 848 (1970); *Kilsey v. Chuck Wagon, Inc.,* 119 R.I. 443, 446, 379 A.2d 919, 921 (1977).

2. Specifically, the division pointed to the versions of G.L.1956 § 28–33–18 that were in effect at the time of the employees' injuries and which basically said that an employer must pay partial-

## Facts

After being injured at work, the claimant employees, Susan Cole, Fred Cabral, and Veneranda Maria Carvalho, were receiving weekly workers' compensation benefits and performing light-duty work as manufacturing-process employees at Davol, Inc. (Davol). Pursuant to a collective-bargaining agreement with Davol, they had earned credit for, and were entitled to receive, vacation-pay benefits based upon the amount of time each of them had worked at Davol. For two weeks each year Davol closed its manufacturing operations, and all qualifying employees (those who had worked the requisite number of months at Davol) received varying amounts of vacation pay during the shutdown. Even Davol's maintenance employees who continued to work through this period received vacation pay in addition to their regular compensation.

In deciding an appeal challenging Davol's method for calculating the employees' post-injury earning capacities,[1] the Appellate Division of the Workers' Compensation Court held that any vacation benefits paid to employees during the shutdown were earnings under the applicable law[2] that could be offset by the employer from the amount of the workers' compensation payments due employees during the shutdown. The employees take exception to this conclusion and seek redress here via certiorari petitions.

## Analysis

■ The Workers' Compensation Act (WCA) is social legislation that should "be interpreted liberally with regard to the rights of employees." *Roy v. Providence Metalizing Co.,* 119 R.I. 630, 636–37, 381

ly incapacitated employees an amount equal to 66 2/3 percent of the difference between their average weekly wages, earnings, or salary before the injuries and the weekly wages, earnings, or salary that they earned thereafter, but not more than the maximum rate for total incapacity. We note parenthetically that the differential rate in § 28–33–18 is now 75 percent. We also note that, after oral argument in this case, another Appellate Division decision purported to overrule the division's earlier ruling in *Cole v. Davol, Inc.,* WCC 91–1994. *See Escobar v. Davol, Inc.,* WCC 91–2327, slip op. at 7 (June 13, 1996).

A.2d 1051, 1054 (1978). The "primary object" of the WCA

> "is to provide economic assistance to an employee who is injured and thereby suffers a loss of earnings. The Compensation Act was intended to impose upon the employer the burden of taking care of the casualties occurring in his employment, thus preventing the injured employee from becoming a public charge. * * * [Workers'] compensation payments were never intended to provide general health and accident insurance or to afford full compensation for injuries suffered from one's employment. * * * The * * * Act is humane legislation designed to afford a modicum of economic shelter to one who has sustained an industrial injury." *Geigy Chemical Corp.,* 106 R.I. at 541, 261 A.2d at 848–49.

■ The compensation benefit paid an employee, however, "was never intended as something being paid for nothing." *Id.* at 541, 261 A.2d at 849. Rather, the benefits paid are merely a substitute for the weekly wages "an employer would have paid his[,] [her, or its] employee but for the injury." *Id.*; *accord Moniz v. Providence Chain Co.,* 618 A.2d 1270, 1271–72 (R.I.1993).

■ Workers' compensation benefits are payable only for injuries that impair an employee's earning capacity. *See, supra,* footnote 1. And the benchmark of earning capacity under the WCA is the amount of the employee's post-injury earnings: if they are equal to or greater than an employee's pre-injury earnings, then it is presumed that the employee, although disabled, has not suffered the "requisite impairment of earning capacity upon which entitlement to weekly compensation benefits depends." *Kilsey,* 119 R.I. at 445, 379 A.2d at 920.

■ That presumption, however, can be rebutted if it is shown that the "payments received during disability are an unreliable basis for estimating earning capacity." *Id.* For example, in *Kilsey* we said:

> "[T]he recovery of compensation benefits will not be precluded if the payments received by an employee are intended as a gesture of gratitude by a grateful employer for past services rendered, *Trzoniec v.*

*General Controls Co.,* 100 R.I. 448, 451, 216 A.2d 886, 888 (1966), *or if the payments represent accumulated sick leave and vacation pay, Robidoux v. Uniroyal, Inc.,* 116 R.I. 594, 597–98, 359 A.2d 45, 47–48 (1976)." (Emphasis added.) 119 R.I. at 445, 379 A.2d at 920.

And two years later we noted that an employer's right to a credit for overpayment

> "depends * * * on the reasons motivating the employer to continue the employee on its payroll during the period of his incapacity. Thus, * * * a weekly payment in an amount equal to salary paid by a sympathetic employer will not be deemed a disability benefit if paid, not with the intention that the payment be in lieu of compensation benefits, but rather as a voluntary gesture of gratitude for past services." *Albert Zabbo & Sons, Inc. v. Zabbo,* 122 R.I. 79, 84, 404 A.2d 487, 489 (1979).

The starting point for any analysis of vacation-pay issues in workers' compensation cases is *Robidoux.* There, a workers' compensation tribunal denied a disabled employee benefits on the ground that, because he had received accrued sick and vacation leave during his absence in an amount greater than his pre-injury wages, there had been no diminution of earning capacity. *Robidoux v. Uniroyal, Inc.,* 116 R.I. 594, 596–97, 359 A.2d 45, 47 (1976). But in language that bears directly on the present case, we held:

> "Just as * * * wages paid out of sympathy and in consideration of long service do not reflect actual earning capacity, so, too, is it now our judgment that the accumulated sick or vacation leave payment which the employee may have earned by virtue of his past services and which would otherwise be available to him when not suffering from a work-incurred disability might be lost forever if required to be included in the computation of his earning capacity." *Id.* at 598, 359 A.2d at 48.

In *Robidoux,* we did not think that the Legislature could have intended such a result in the context of determining what should be included in calculating an injured employee's earning capacity. *Id.* at 599, 359 A.2d at 48.

Vacation pay is an incident of employment. *Id.* at 598, 359 A.2d at 48. Like sick leave, it is a benefit typically provided under an employment agreement, and it is a benefit that an employee acquires over time as a result of continued employment with the same employer. *See id.* Employees are entitled to vacation pay whether or not they have sustained a compensable injury. *See* 1C Arthur Larson & Lex Larson, *The Law of Workmen's Compensation* § 57.46(c) at 10–270–73 (1996) (hereinafter *Workmen's Compensation*). In these circumstances, no credit or offset is usually allowed. *See, e.g., Lanterman v. Roadway Express, Inc.,* 608 So.2d 1340, 1349 (Miss.1992) ("[w]hile we follow the rule that [an employee] is not entitled to compensation when he receives his regular salary in lieu of compensation, *sick pay, vacation pay, donations or gratuities are not salary in lieu of compensation*" (emphasis added)); *Shannon v. St. Louis Board of Education,* 577 S.W.2d 949, 953 (Mo.Ct.App. 1979) ("[v]acation pay * * * would not be wages paid after the injury or on account of the injury and thus may not be credited against the amount of compensation payable"); *see also* 1C *Workmen's Compensation* § 57.46(c) at 10–272 (disallowing credit for vacation pay because it is based on past service, rather than work-connected injury). We see no reason to turn a deaf ear to the logic of these authorities or to mute their application to the facts here.

According to the Appellate Division, all Davol employees who "*earned* sufficient vacation credits based upon *prior service* received vacation pay *benefits.*" This remuneration was not paid to employees in relief of their work-related injuries. *Compare Murhon v. Workmen's Compensation Appeal Board (Kawecki Berylco, Inc.),* 152 Pa. Commw. 229, 234–35, 618 A.2d 1178, 1181 (1992) (when "holiday payments were made 'wholly as a consequence of the [employees'] disabled status, rather than on the basis of having worked for any number of hours ...' the employer will be entitled to a credit") *with Hildebrand v. Workmen's Compensation Appeal Board (Fire Department/City of Reading),* 111 Pa. Commw. 24, 29, 532 A.2d 1287, 1289 (1987) (noting generally that an "employer is not entitled to credit for pay-

ments which 'come out of, and therefore reduce, an accrued entitlement which the employee has built up by his performance of services for the employer,' such as payments out of earned sick leave or vacation pay") (quoting *Hartwell v. Workmen's Compensation Appeal Board (McLean Trucking Co.),* 96 Pa. Commw. 313, 316–17, 507 A.2d 902, 904 (1986)). Rather, it constituted an accumulated benefit of employment at Davol. Davol's counsel forthrightly acknowledged at oral argument that if employees had terminated their employment at Davol before the shutdown, they still would have received their accrued vacation pay. And it is also undisputed that the maintenance employees who had to work during the shutdown received their usual compensation plus vacation pay. In these circumstances, we conclude that Davol was not entitled to a credit or an offset for vacation-pay benefits.

Davol attempts to cast doubt on this interpretation of the law by referring to *one* case in which a credit was not flatly rejected. *See Jones v. Chevrolet–Tonawanda Division, G.M.C.,* 87 A.D.2d 924, 925, 450 N.Y.S.2d 62, 63 (1982). But there is a problem that Davol leaps over as it plunges into the alluring waters of *Jones.* That case concerned an interpretation of § 25 of the New York Compensation Law, which provides for reimbursement to the employer if it "has made advance payments of compensation, or has made payments to an employee in like manner as wages during any period of disability * * *." N.Y. Work. Comp. Law § 25 (subd. 4, (a)) (McKinney) (*discussed in Jones,* 87 A.D.2d at 924, 450 N.Y.S.2d at 63). There is no comparable provision in the Rhode Island WCA, and we reject Davol's attempt to redraft § 28–33–18 in the service of its cause. *Cf. BIF a Unit of General Signal Corp. v. Des Roches,* 116 R.I. 280, 355 A.2d 404, *reh'g denied,* 117 R.I. 914, 915, 364 A.2d 1290, 1290 (1976) (declining to read into § 28–33–18 the right to take a deduction or credit for retirement benefits paid to an employee receiving workers' compensation).

To buttress its claim, Davol also points to § 23–33–20, which provides that paid vacation time can be used in calculating an employee's pre-injury average weekly wage.

Davol theorizes that if vacation pay is included in the pre-injury formula (thus serving to increase the amount of compensation benefits an employee can receive), it should also be included when computing post-injury earnings. This argument overlooks the fact that § 28–33–20's vacation calculus only applies to injuries occurring *on or after May 18, 1992,* which is not the case here. P.L.1992, ch. 31, § 5.

## Conclusion

For these reasons we grant the petitions for certiorari, quash that part of the Appellate Division's final decrees allowing Davol to take a credit for vacation payments against workers' compensation benefits, and remand these cases to the Workers' Compensation Court with our decision endorsed thereon.