[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Appellant Richard Wilkinson's (Wilkinson or Appellant) appeal from a decision of the State Personnel Appeal Board (Board). Wilkinson sought back compensation, specifically for vacation pay accrued, from the University of Rhode Island (U.R.I.).[1] The Board refused to accept jurisdiction over the matter to hear the grievance. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
Wilkinson was an employee of the Rhode Island State Crime Laboratory (Crime Lab) at U.R.I. from 1971 until 2002. In 1992 and again in 1996, U.R.I. terminated Wilkinson's employment, which was reinstated after litigation both times. Our Supreme Court rendered a decision on January 31, 2002 with respect to Wilkinson's 1996 wrongful termination. SeeWilkinson v. State Crime Lab. Comm'n, 788 A.2d 1129 (R.I. 2002). TheWilkinson litigation resulted in Wilkinson's reinstatement at the Crime Lab with back pay and full benefits. The Supreme Court then remanded the case to the Superior Court for a determination of the benefits to which Wilkinson was entitled. The Court directed "any grievance[s] Wilkinson may have with the procedures implemented by URI after his reinstatement to the [Board], which has jurisdiction over Wilkinson as a confidential employee." Id. at 1144; (Bd. Decision at 1.)
On April 9, 2002, a dismissal stipulation releasing U.R.I. was filed in Superior Court. (Bd. Decision at 1-2.) As a condition to the dismissal and release, Wilkinson had to be reinstated and paid back wages as ordered by the Superior Court. (Bd. Decision at 2.) On April 22, 2002, Wilkinson was reinstated to his position at the Crime Lab. (Bd. Decision at 2.) Wilkinson requested vacation, sick, and personal time off from work and "was informed by Dennis C. Hilliard, Director of the Crime Lab, that the back pay settlement agreement which had been negotiated between Mr. Wilkinson and the State included payment for all benefits, including any vacation time accrued prior to the May 3, 2002 settlement." (Bd. Decision at 2.) Wilkinson did, in fact, receive $325,000 in full settlement pursuant to the release. (Bd. Decision at 5.) Effective May 15, 2002, Wilkinson retired from his position as Laboratory Assistant Director through a letter of resignation. (Bd. Decision at 3.) The Superior Court dismissed the action based on the stipulation of dismissal signed by both parties. (Bd. Decision at 3.)
Wilkinson filed a grievance with the Board on September 4, 2002, claiming that he had not been fully reinstated to his position because he was not given the benefits such as back vacation and sick time to which he was entitled. (Bd. Decision at 3.) Wilkinson alleged that he was entitled to back vacation and sick pay for the period that he would have been employed from January 1996 through April 2002. (Bd. Decision at 4.) Though Wilkinson computed the amount owed to be $35-40,000, his complaint before this Court sought $30,000 instead. (Appellant's Brief at 11.)
On October 3, 2002, U.R.I. moved to dismiss Wilkinson's appeal, challenging the jurisdiction of the Board to hear the matter. (Bd. Decision at 4.) The Board held a hearing on December 17, 2002 and received briefs from the parties on January 15, 2003 addressing the issue of jurisdiction.
The Board concluded that it could not hear Wilkinson's appeal because in signing the settlement, he had released all claims for back vacation pay. (Bd. Decision at 6.) The Board focused on the language of the release itself, finding it clear and unambiguous. Second, the Board found that it could not hear such an appeal because Wilkinson was not a state employee, having terminated his employment some four months earlier. (Bd. Decision at 7.) The Board also concluded that it had no jurisdiction to hear Wilkinson's appeal because the appeal was not timely filed. (Bd. Decision at 7.) The Board noted that the appeal period is thirty (30) days, but Wilkinson did not file until September, far in excess of said period. (Bd. Decision at 7-8.) Finally, the Board determined that there was no appealable adverse action under the statute from which Wilkinson could appeal. (Bd. Decision at 8.)
Accordingly, the Board denied and dismissed Wilkinson's appeal, suggesting that Wilkinson seek any remedy he had before the Superior Court. (Bd. Decision at 8-9.) Wilkinson timely appealed the Board's denial to this Court. A decision is herein rendered.
 STANDARD OF REVIEW
The Superior Court's power to review appeals of agency decisions is governed by G.L. 1956 § 42-35-1 et seq. Section 42-35-15(g) provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The Superior Court sits as an appellate court with a limited scope of review, under which the justice may not substitute his or her judgment for that of the agency with respect to credibility of the witnesses or the weight of the evidence as to questions of fact. Ctr. for BehavioralHealth v. Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety AppliancesCo. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). "`[T]he Superior Court may not, on questions of fact, substitute its judgment for that of the agency' . . . even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency.'" Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799,805 (R.I. 2000) (quoting Rhode Island Pub. Telecomm. Auth. v. RhodeIsland State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994)). "If there is sufficient competent evidence in the record, the court must uphold the agency's decision." Id. (quoting Barrington Sch. Comm. v. RhodeIsland State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)).
 BOARD'S DECISION
Appellant argues that the release does not bar his claim for back vacation and sick pay because U.R.I. did not comply with the conditions agreed to in the stipulation. Appellant contends that U.R.I.'s failure to compensate him for his back vacation and sick pay for the 1996-2002 period invalidated the settlement and release. Appellant contends that he filed the appeal timely, as he was listed as "on administrative leave" by U.R.I.'s own documents through August 16, 2002, and the grievance of August 25, 2002 therefore fell within the thirty (30) days. Appellant argues that he was indeed a state employee at the time of filing the appeal because his resignation was contingent on the completion of the commitments agreed to by U.R.I., which it failed to do. Next Appellant claims U.R.I. unlawfully ended his period of employment on August 16, 2002, even though conditions for such a termination had not been met. According to Appellant, such an action is certainly adverse, and any conclusion by the Board to the contrary was erroneous, an abuse of discretion, and unsupported by the record.
Appellees argue that the settlement was a full and final settlement of all claims, losses and damages, including any claim Appellant may have had to previously accrued vacation and sick pay. Appellees note that the matter was dismissed with prejudice in accordance with the dismissal stipulation, and judgment in accordance with the stipulation and release which was approved by the Superior Court on July 8, 2002. Appellees contend that the language of the release is clear and unambiguous, fully and finally releasing any and all claims that Appellant had or may have from any and all actions, claims, and demands of any kind. In support of said argument, Appellees state that an established rule of construction is to follow the plain and ordinary meaning of the language used. Appellees argue that the Board properly concluded that Appellant was not a state employee at the time he filed the appeal because he retired effective May 15, 2002 and did not file the appeal until September 4, 2002. The Board properly concluded that the appeal was not timely filed and was barred, according to Appellees. Finally, Appellees contend that the appeal does not constitute an adverse action that the Appellant could appeal under the statute, § 36-4-42, and any action should have been heard by the Superior Court, not the Board.
It is well-settled that "[o]ur [Supreme Court's] policy is always to encourage settlement." Homar, Inc. v. North Farm Assocs., 445 A.2d 288, 290
(R.I. 1982) (stating voluntary settlement of disputes long favored by courts). A party "has a valid and substantial interest in `buying his peace' through a release-and-settlement agreement." Id. (citing Cooney v.Molis, 640 A.2d 527, 530 (R.I. 1994)). "The general rule supported by the weight of authority is that a release or a contract of settlement of a disputed claim when timely pleaded is a bar to an action on such claim, so long as it is not rescinded or avoided by a return or offer to return the money or other valuable consideration given for it." Lamoureaux v.Merrimack Mutual Fire Ins. Co., 751 A.2d 1290, 1293 (R.I. 2000) (quotingPelletier v. Phoenix Mutual Life Ins. Co., 49 R.I. 135, 136, 141 A.2d 79,80 (1928)). "[A]n agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions." Id. (citing Kottisv. Cerilli, 612 A.2d 661, 664 (R.I. 1992) as quoting Cavanaugh v.Bostitch, Inc., 92 R.I. 12, 14, 165 A.2d 728, 729 (1960)). "The lodestar principle upon which these rules rest `is that one who takes money offered on condition thereby accepts the condition, and in the absence of fraud or other excuse, he [or she] is bound by [that] act.'" Id. (referencingHull v. H.A. Johnson Co., 22 R.I. 66, 67, 46 A. 182, 182 (1900)).
In this case, the "Release of all Claims" was signed by Appellant on May 3, 2002, after being drafted and agreed to by the State of Rhode Island, and the Rhode Island Crime Laboratory Commission. The release provides that Appellant released and discharged the stated defendants "of and from any and all actions, causes of action, claims and demands of whatever kind and nature which [he], as plaintiff, [had] or in the future may have for all losses and damages on account of or in any way related to the claims set forth in that action which is pending. . . ." (Release at 1.) The release goes on to state that Appellant "voluntarily accept[s] said considerations for the purpose and with the intention of making a full and final compromise and settlement of all claims against said [parties] on account of or in any way related to the aforesaid losses and damages." (Release at 1.) The amount to be paid in consideration of the release amounts to what Appellant "could have made during [his] absence from State employment for the period from about 1996 to the present. . . ." (Release at 1.) The release operates on "damages and losses claimed to be related to or resultant from [Appellant's] separation(s) from State employment that occurred on or about 1991 and 1996. . . ." (Release at 1.)
The record reflects that the Board placed significant weight on the clear and unambiguous language in the release. (Bd. Decision at 6.) The Board found that based on the language of the release, Appellant's claims to back vacation pay were barred because he had exchanged the release for a payment of $325,000. (Bd. Decision at 6-7.) It is well-settled that a state cannot be required to pay twice when resolving wrongful discharge cases. State ex rel. Hamlin v. Collins, 459 N.E.2d 520, 524 (Ohio 1984). The Board also recognized that Appellant fully understood the terms of the settlement and that he voluntarily accepted the release terms. (Bd. Decision at 6.) "Settlement of a disputed liability is as conclusive of the parties' rights as is a judgment that terminates litigation between them." Calise v. Hidden Valley Condo. Assoc., Inc., 773 A.2d 834, 839
(R.I. 2001) (quoting Homar, 445 A.2d at 290). The Board's interpretation of the release itself as the final agreement to the termination of Appellant's employment in exchange for a monetary sum and barring all other claims forecloses a second payment now for back vacation pay. A party to a binding settlement agreement cannot affirm the agreement insofar as it benefits him or her, while simultaneously arguing said agreement is ineffective or inoperative as to certain other benefits.See id.; Pelletier, 49 R.I. at 137, 141 A. at 80.
Based on the standard of review set forth under § 42-35-15(g), this Court may not substitute its judgment for that of the Board. However, "[i]n the absence of ambiguity, the interpretation of a contract is a question of law. . . ." Andrukiewicz v. Andrukiewicz, 860 A.2d 235, 238
(R.I. 2004) (discussing standard for interpreting property settlement agreement); see also Lajayi v. Fafiyebi, 860 A.2d 680, 686 (R.I. 2004) (quoting Dubis v. East Greenwich Fire Dist., 754 A.2d 98, 100 (R.I. 2000)). This Court agrees that when interpreting agreements the plain, ordinary, and usual meaning of the words should be used in construing the agreement. A.F. Lusi Constr., Inc. v. Peerless Ins. Co., 847 A.2d 254, 258
(R.I. 2004). "If the Court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written." Capital Props. v. State,746 A.2d 1069, 1081 (R.I. 1999) (quoting W.P. Assocs. v. Forcier, Inc.,637 A.2d 353, 356 (R.I. 1994)). "In such a situation, [the court] must give [the] language its plain, ordinary, and usual meaning." Fleet Nat'lBank v. 175 Post Rd., LLC, 851 A.2d 267, 275 (R.I. 2004). Here, the language of the release is clear and unambiguous as was found by the Board. (Bd. Decision at 6.) Therefore, the Board correctly applied the plain, ordinary, and usual meaning method of construction in evaluating the release, finding that the Appellant, "in exchange for the payment of $325,000, released the claim for vacation pay. . . ." (Bd. Decision at 6.) Based on this Court's review of the record, the Board's interpretation of the terms of the release was not clearly erroneous, nor was it in violation of statutory or constitutional provisions, nor affected by error of law.
Under § 36-4-42, the Board may hear appeals filed only by "[a]ny state employee. . . ." A state employee is defined as "any officer or employee of the State of Rhode Island whose business time is devoted exclusively to the services of the state, but shall not include one whose duties are of a casual or seasonal nature." Section 36-8-1. The Appellant contends that he was merely listed as "on administrative leave" through August 16, 2002, and thereby entitled to back vacation pay. (Appellant's Brief at 6.) "Vacation pay is incident to employment." Cole v. Davol, Inc.,679 A.2d 875, (R.I. 1999) (citing Robidoux v. Uniroyal, Inc., 116 R.I. 594,598, 359 A.2d 45, 48 (1976)). "Like sick leave, [vacation pay] is a benefit typically under an employment agreement. . . ." Id. (citing same). The fact that Appellant signed a release agreeing to retire as of May 15, 2002 evidenced that in actuality Appellant had retired. This Court gives deference to an agency's interpretation of its own governing statutes and regulations. Accordingly, the Board's finding that Appellant was not a state employee at the time of filing the appeal was supported by reliable, probative, and substantial evidence and was not affected by error of law.
Section 36-4-42 also mandates an appeal be filed "within thirty (30) calendar days of the mailing of the notice of [the appointing authority's personnel] action. . . ." Appellant urges that he was on "administrative leave" until August 16, 2002 and the filing of his appeal on September 4, 2002 was within the thirty (30) day window. The Board noted that Appellant "admitted that he was denied the claimed vacation pay as of May 2002, but did not file an appeal with [the] Board until September 2002." (Bd. Decision at 7.) The Board reviewed several dates that could be viewed as the date of the personnel action including April 22, 2002 when Appellant was reinstated, the date of the release on May 3, 2002, his resignation on May 15, 2002, and approval of the final dismissal on July 8, 2002. (Bd. Decision at 7-8.) The Board found that Appellant sought his back vacation pay at some time in May and was denied because of the release. (Bd. Decision at 8.) Such a date would be the appropriate notice of the personnel action, which starts the thirty (30) day period for filing an appeal under § 36-4-42. The Board concluded that Appellant did not satisfy the thirty (30) day filing requirement using any of the above dates as the notice of the action. This Court finds that such a conclusion was indeed based on the reliable, probative, and substantial evidence of record and was not arbitrary, capricious, or affected by error of law.
The matters that an employee may appeal to the Board are explicitly set forth in § 36-4-42, which the Board relied on in its decision. Appellant contends that his period of employment was unlawfully ended on August 16, 2002, in spite of the fact that the agreed to conditions of his termination/retirement were not met, and accordingly such an action qualifies as adverse. The Board noted that the action must have resulted in "a demotion, suspension, layoff, or dismissal, or . . . any personnel action which an appointing authority might take which causes the person to believe that he or she has been discriminated against because of his or her race, sex, age, disability, or his or her religious beliefs." Section 36-4-42; (Bd. Decision at 8.) The Board found that "[t]here [was] no claim in this matter that Mr. Wilkinson's appointing authority [had] taken any of the enumerated adverse actions against him, nor [was] there any claim of discrimination." (Bd. Decision at 8.) It "is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." Murray v. McWalters, 868 A.2d 659, 662 (R.I. 2005) (quoting In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). Wilkinson's appeal was meant to gain back vacation payments, which he sought upon reinstatement to his position. The statute does not provide for an appeal to gain back pay of any kind. See Section 36-4-42. Accordingly, this Court finds that the Board's conclusion that there was no appealable adverse action was not affected by error of law and was supported by the reliable, probative, and substantial evidence of record.
CONCLUSION
Based on the reliable, probative, and substantial evidence of record, this Court upholds the Board's decision that Wilkinson released any and all claims for back vacation and sick pay in exchange for $325,000 and a stipulation of dismissal with prejudice. This Court also finds the Board's findings that Wilkinson was not a state employee at the time he filed the appeal, and that he did not timely file said appeal were not affected by error of law. Additionally, the Board's finding that Wilkinson's appeal involved no appealable adverse action was supported by the record. The Board's decision was not an abuse of discretion, arbitrary or capricious, or in violation of statutory or constitutional provisions, or affected by error of law. Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Board is hereby affirmed.
Counsel shall submit an appropriate order consistent with this opinion.
[1] (Hereinafter Board, URI or Appellees).