DECISION
Appellants Raymond Horbet, [1] James D'Abrosca, and Joseph Bessett[2] ("Appellants") brought this appeal from a decision of the Department of Labor and Training ("DLT"). In that decision, the Hearing Officer denied the Appellants' claims and found that they were not entitled to recover vacation pay from their former employer, New Penn, Inc. ("Respondent" or "New Penn"). Recently, the Court received notice that Appellants Horbet and D'Abrosca have resolved their differences with New Penn by settlement and will be withdrawing *Page 2 
their appeals. Accordingly, in this decision, the Court addresses only the issues as they pertain to the appeal of Bessett. All other issues have become moot.[3]
This Court derives its jurisdiction over this appeal pursuant to G.L. 1956 § 42-35-15. For the reasons set forth below, the Court denies the appeal of Appellant Bessett.
 I Facts and Travel
Joseph Bessett ("Bessett" or "Appellant Bessett") formerly was employed at New Penn as a driver. (Complaint of Bessett, January 27, 2009 ("Bessett Complaint.")) The terms and conditions of his employment were set forth in the collective bargaining agreement between New Penn and his union.[4]
(Admin. Hr'g Tr., July 30, 2009 ("Tr.") at 18, 42, 43-47.) Upon his date of retirement in 2009, Appellant claimed that he was owed wages for vacation time that had accrued and vested pursuant to the terms of the CBA. New Penn rejected the claims, and Bessett filed a complaint with DLT claiming non-payment of wages.[5]
On January 27, 2009, Bessett filed a complaint with DLT's Division of Labor Standards to allege non-payment of wages for vacation pay. Id. at 1. Appellant Bessett began working for New Penn on April 20, 1992. (Bessett Complaint.)[6] In his complaint with DLT, Bessett *Page 3 
responded to the following question: "What dates did you work for the money which you claim you are owed:" he responded: "from 1/1/2007 to 11/20/07 4 weeks." Id. When the dispute between New Penn and Appellant remained unresolved, DLT scheduled a Labor Standards hearing before a duly designated DLT hearing officer. (Tr. at 3.)
Appellants Bessett, Horbet, and D'Abrosca's complaints were consolidated for the evidentiary hearing, which hearing was conducted on July 30, 2009. Id. at 1, 3. The three Appellants testified at the hearing as did New Penn's Vice-President of Human Resources and Risk Management, Andrew J. Kerlik ("Mr. Kerlik"). In addition to witness testimony, the Hearing Officer considered the following: two memoranda authored by Horbet;[7] a copy of the pertinent CBA provision regarding vacation pay. Over the objection of counsel for the Appellants, the Hearing Officer allowed New Penn to offer into evidence an arbitration decision and the briefs submitted by the parties in another case, not involving the same complainants. Id. at 27-29.[8]
At the hearing, the parties submitted the relevant provision, Article 50 of the CBA, as a joint exhibit. This Article, entitled "VACATIONS," provides in pertinent part:
 "(a) Regular employees who have been on the Employer's payroll for one (1) year and who have worked at least one hundred thirty-five (135) days during that year, including any absence resulting
 *Page 4 
 from the performance of duties under this Agreement, shall be entitled to one (1) week's vacation with pay in each year to be taken during the vacation period provided in subsection (f) [sic] hereof. The requirement of 135 days of employment applies only to the first year of employment. In subsequent years all employees must work a minimum of twenty-five (25) days to qualify for vacation. The above provision shall be waived for employees retiring as of January 1 of any year; provided notice is given to Employer in December of previous year.
 New employees hired during the previous year who are entitled to a vacation and older employees who do not work a full year shall receive vacation pay equal to the average of their earnings for the full weeks which they worked in that year, with a minimum of forty (40) hours at the current hourly rate.
 All regular employees shall receive their vacation pay due them in advance on the basis of their earnings for the previous calendar year ending December 31, one fifty-second (1/52nd) of their earnings for each week of vacation, but not less than forty (40) hours pay per week at the current hourly rate. Any employee who is discharged or who quits between January 1st and May 1st shall receive the vacation allowance due him for that year. The Employer agrees he will issue separate checks for employees' vacations.
 (b) Employees with two (2) years or more of service shall be entitled to two (2) weeks' vacation with pay in each year.
 (c) Employees whose eighth (8th) anniversary date falls on or after April 1, 1991 shall be entitled to three (3) weeks of vacation with pay in each year.
 (d) Employees with fifteen (15) years or more service shall be entitled to four (4) weeks' vacation with pay in each year.
 (e) Employees with twenty (20) years or more of service shall be entitled to five (5) weeks' vacation with pay in each year.
 (f) Employees with thirty (30) years or more of service shall be entitled to six (6) weeks' vacation pay in each year effective January 1, 2004.
 . . . ." (Joint Ex. 1, Collective Bargaining Agreement, Article 50.) *Page 5 
Appellant Bessett testified that he began his employment with New Penn on April 20, 1992. Id. at 23. He stated that in 2007, he worked twenty-eight weeks before leaving work due to a work-related injury. During the remainder of 2007, Bessett received Workers' Compensation benefits. Id. at 23-24. He testified that employees were paid for unused vacation time in arrears, and that he never used the vacation time he accrued as a result of working twenty-eight weeks in 2007. Id. at 23. Bessett claims that he earned and was entitled to four weeks of paid vacation for that year. Id. at 23, 30-31.
Due to his injury from 2007, Appellant Bessett continued to receive Workers' Compensation benefits and did not work in 2008.Id. at 23-24, 30. While on Workers' Compensation in 2008, Appellant Bessett decided that once he stopped receiving benefits, he would retire from New Penn. Id. at 24, 26. Bessett explained that he did not retire prior to that time because he was not permitted to retire while collecting Workers' Compensation. Id. at 25.
Bessett testified that in anticipation of his retirement, he had a conversation with the terminal manager, Bart Wagner ("Wagner") in December 2008 to inform him of his retirement plans, but did not discuss vacation pay during the conversation. Id. at 24. Rather, Bessett assumed that he was entitled to four weeks of vacation pay for working in 2007, the previous year.Id. at 24. Appellant Bessett retired from New Penn in January 2009, once his Workers' Compensation benefits ended.Id. at 25-26. He testified that he did not work in 2009.Id. at 26-27.
At the hearing, Bessett, through counsel, asserted that he was entitled to eight weeks of vacation pay from New Penn.Id. at 31-32. The first four weeks stem from 2007, when he worked twenty-eight weeks. Id. The second four weeks purportedly include the vacation pay from 2008, when Appellant Bessett was on Workers' Compensation. Id. *Page 6 
Horbet testified that since he started working at New Penn, the applicable vacation policy provided that an employee would accrue vacation time one year and receive vacation pay for that accrued time in the following year. (Tr. at 6.) He explained: "You earn it the previous year. You earn — it's paid like in arrears. I would earn my `08 vacation in `07. . . . I would earn my `09 vacation in `08." Id. at 7.
New Penn presented testimony from one witness, Andrew Kerlik, Vice President of Human Resources and Risk Management.Id. at 43. Mr. Kerlik testified that he was familiar with the Appellants, as well as the Providence Terminal Manager, Wagner.Id.
During the hearing, Mr. Kerlik was asked to provide his interpretation of Article 50 of the CBA and to articulate New Penn's policy regarding vacation eligibility pursuant to the provision.Id. at 44. According to Mr. Kerlik, New Penn's vacation policy under Article 50 of the CBA is as follows:
 "For continuing employees, they need to work at least 25 days in the current calendar year — in the next year to get vacation for the previous year. And for retired employees, they need to work until the end of the year. If they do that, the 25 days is waived." Id.
Based on his interpretation of New Penn's vacation policy, Mr. Kerlik stated that Bessett was not eligible for vacation pay.Id. at 44-45. Specifically, he testified that Appellant Bessett's failure to work twenty-five days in 2008 precluded him from obtaining vacation for that year. Id. at 45.
During the course of the hearing, an issue arose regarding whether Appellant Bessett had already received the vacation pay that he was seeking at the hearing. Id. at 32. Respondent requested the opportunity to review its records and inform the Hearing Officer of its findings on the issue. Id. The Hearing Officer acquiesced to the Respondent's request and instructed counsel to "check your records to verify that." Id. at 32-33. However, he did not continue the hearing to receive additional evidence and concluded the proceeding without addressing the *Page 7 
possibility of re-opening the matter to receive any additional evidence that New Penn might locate on the subject.
Instead, he permitted the parties to submit post-hearing briefs within thirty days after receiving the hearing transcript.Id. at 50. He requested that parties address a number of issues in their respective briefs, inviting them to comment on the evidence and to address the impact, if any, of the alleged facts to the applicable provisions of the CBA. Id. at 50-51.[9] The Hearing Officer indicated that the parties may submit reply briefs within two weeks following receipt of the brief from the opposing party or parties. Id. at 50.
On September 14, 2009, the Hearing Officer received Appellant's post-hearing brief. (Decision at 4.) Although Respondent opted not to submit a post-hearing brief, it filed a response to Appellant's post-hearing brief. Id. In the reply brief, Respondent offered new evidence regarding vacation wages that had been paid to Bessett.Id. at 6. Based upon the Hearing Officer's decision, it appears that he accepted these factual representations as evidence. In his decision, the Hearing Officer notes that New Penn suggests that Appellant Bessett was paid for vacation time in 2007.Id. Those representations are not part of the hearing record, and there is no indication on the record that Appellant was given the opportunity to confront this evidence prior to the Hearing Officer's decision.
On November 18, 2009, the Hearing Officer rendered a decision finding that New Penn did not owe Appellant any pay for vacation time. (Decision at 6-7.) In his decision, the Hearing Officer made findings of fact based upon his review of the record. Id. *Page 8 
At the outset, the Hearing Officer found that Bessett was a member of the Collective Bargaining Unit and subject to the terms and conditions of the CBA because they were employees of New Penn.Id. at 5. Further, the Hearing Officer observed that Article 50 of the CBA sets forth the criteria to determine if an employee is entitled to vacation wages. Id. Interpreting the purview of Article 50, the Hearing Officer found:
 "Normally, after an employee works for one (1) year and has worked one hundred and thirty-five (135) days during the current year, he is entitled to one (1) week's vacation during that subsequent year. In subsequent years, an employee must work only a minimum of twenty-five (25) days to qualify for vacation in that subsequent year. The more years an employee is employed, he earns additions [sic] weeks of vacation with those employees having provided thirty (30) years or more years of service entitled to six (6) weeks paid vacation. With regard to employees, who are retiring, this provision that an employee work a minimum of twenty-five (25) days to qualify for vacation in that subsequent year may be waived, but the retiring employee must notify the respondent in December that he is retiring as of January 1. It is clear that according to the CBA, retirees must either work twenty-five (25) days in the year or retire no earlier that [sic] January 1 in order to be entitled to the paid vacation days upon retirement." Id.
Regarding Appellant's claim for vacation wages, the Hearing Officer found that "[t]he information provided in the respondent's reply brief demonstrates that the petitioner Bessett was paid vacation wages in 2007." Id. at 6. Accordingly, the Hearing Officer determined that the only issue for consideration concerning Bessett was whether he was entitled to 2008 vacation wages.Id.
The Hearing Officer found that he was not entitled to 2008 vacation wages. Id. Specifically, the Hearing Officer determined that Appellant Bessett did not work a minimum of twenty-five days in 2008 because he was out that entire year with a worker related injury. Id. Accordingly, the Hearing Officer found that Appellant Bessett failed to conform to the requirements of Article 50 of the CBA, and thus, he was ineligible to recover vacation wages. *Page 9 Id.
On December 7, 2009, Bessett filed a timely appeal to the Superior Court. On appeal, he avers that the Hearing Officer erroneously determined that he already received vacation wages for 2007. He further asserts that the Hearing Officer erred in denying his claim for vacation pay for 2008.
In response, New Penn maintains that Appellant Bessett's claim for 2007 vacation pay is invalid because the evidence presented to the Hearing Officer in its post-hearing brief demonstrates that he received vacation pay in 2007. New Penn did not address Bessett's claim for 2008 vacation pay.
 II Standard of Review
The Court reviews a contested administrative decision pursuant to the Administrative Procedures Act, G.L. 1956 § 42-35-15(g). This section provides that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15(g).
Such a review is "limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston AmbulatorySurgical Assoc., Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch. Comm. v. Rhode Island State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). *Page 10 
"Legally competent evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Town of Burrillville v. Rhode Island State Labor RelationsBd., 921 A.2d 113, 118 (R.I. 2007). This Court's limited review, however, is not merely a rubber stamp for agency action and when appropriate, it may
 "reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion." Nolan, 755 A.2d at 805 (quoting Barrington Sch. Comm., 608 A.2d at 113).
Moreover, the Court is free to conduct de novo review of determinations of law made by the agency. Arnold v. Rhode IslandDep't of Labor Training Bd. of Review,822 A.2d 164, 167 (R.I. 2003) (citing Nolan, 755 A.2d at 805). Thus, while the factual determinations of an agency are afforded great deference, questions of law are reviewed by the Court de novo without deference to the agency's interpretation. SeeArnold, 822 A.2d at 167 (citing Nolan, 755 A.2d at 805).
 III Discussion A Interpretation of Article 50 of the Collective Bargaining Agreement
This case involves the interpretation of a contract, particularly, Article 50 of the CBA. This Court reviews the provisions of the CBA de novo to determine whether the applicable terms are clear and unambiguous. Bliss Mine Rd. Condo. Ass'n v. NationwideProp. Casualty Ins. *Page 11 Co., No. 2009-33-A., slip op. at 8 (filed Nov. 1, 2010) (citing Young v. Warwick Rollermagic Skating Ctr., Inc.,973 A.2d 553, 558 (R.I. 2009)). Rhode Island courts find contracts ambiguous only when they are "reasonably and clearly susceptible of more than one interpretation.'" Garden City Treatment Ctr.,Inc. v. Coordinated Health Partners, Inc.,852 A.2d 535, 541-42 (R.I. 2004) (quoting Rubery v. DowningCorp., 760 A.2d 945, 947 (R.I. 2000) (per curiam)). To determine ambiguity, this Court will give the words their plain, ordinary and usual meaning. Bliss Mine Rd. Condo. Ass'n, slip op. at 8 (citing Mullane v. Holyoke Mutual Ins. Co.,658 A.2d 18, 20 (R.I. 1995)). This Court "will not construe contractual provisions unless ambiguous."1800 Smith St. Assocs., L.P. v. Gencarelli, 888 A.2d 46, 52 (R.I. 2005) (citingLajayi v. Fafiyebi, 860 A.2d 680, 686 (R.I. 2004); A.F.Constr., Inc. v. Peerless Ins. Co.,847 A.2d 254, 258 (R.I. 2004)); see also Bliss MineRd. Condo. Ass'n, slip op. at 8.
After examining the applicable provision of the CBA, the Court finds one ambiguity in an otherwise clear section of the contract.
The unambiguous language in section (a) of Article 50 provides for vacation pay to be accrued one year and received the next year. No employee is permitted to receive vacation pay during his/her first year of employment, regardless of his/her date of hire. When they have been on the payroll a complete year, so long as they worked at least 135 days during their first year, they can be compensated for accrued vacation. Otherwise, they would not be entitled to receive vacation pay for the time worked during their first year of employment.
Section (a) of Article 50 requires workers to be ". . . on the Employer's payroll for one (1) year . . .". before receiving vacation. In addition, during that first year, they must work ". . . one hundred thirty-five (135) days . . ." (Joint Ex. 1, Collective Bargaining Agreement, Article 50.) *Page 12 
The section provides that "[T]he requirement of 135 days of employment applies only to the first year of employment. In subsequent years all employees must work a minimum of twenty-five (25) days to qualify for vacation." Id.
The CBA further provides that "[a]ny employee who is discharged or who quits between January 1st and May 1st shall receive the vacation allowance due him for that year." Id. At first blush, this provision may appear inconsistent with the requirement that non-retiring employees must work at least 25 days during the year in order to qualify for vacation pay. Obviously, an employee leaving the company during the first few weeks of January would not be entitled to receive vacation pay for the year he/she departs the company. However, the provision is consistent with the remainder of the section if read in connection with the 25 day rule. As such, the CBA provides that only those employees who are discharged or quit from January 1st to May 1st who have worked at least 25 days during that year are entitled to receive vacation pay.
The provision is even clearer when read in connection with the retirement section. "The (25 day) . . . provision shall be waived for employees retiring as of January 1 of any year; provided notice is given to Employer in December of previous year."[10]Id. This provision allows the retiring employee who gives proper notice and who leaves as of January 1st to receive his/her accrued vacation time from the previous year. All other departing employees must work twenty-five days in their departure year to receive vacation pay accrued during the previous year.
The Court finds that these provisions of section (a) of Article 50 are clear and unambiguous. However, the Court does find an ambiguity with one provision of the section. The CBA provides that "[A]ll regular employees shall receive their vacation pay due them in advance on the basis of their earnings for the previous calendar year ending December 31, one fifty-second *Page 13 
(1/52nd) of their earnings for each week of vacation, but not less than forty (40) hours pay per week at the current hourly rate."Id. (Emphasis added)
The Court finds that the term "in advance" is ambiguous because the CBA fails to relate the term to a particular time frame. The words "in advance" are "reasonably susceptible of different constructions." See Bliss Mine Rd. Condo. Ass'n, slip. op. at 9. Our Supreme Court looks to dictionary definitions when determining a word's ordinary meaning. Id. (citingChambers v. Ormiston, 935 A.2d 956, 962 (R.I. 2007);Westinghouse Broad. Co. v. Dial Media, Inc.,122 R.I. 571, 581 n. 10, 410 A.2d 986, 991 n. 10 (1980)). "In advance" is defined as "ahead of time; beforehand." The Random HouseDictionary of the English Language 28 (2d. 1986). This Court cannot reconcile the plain meeting of "in advance" and the context of this section. Section (a) directs vacation payments to be made at the end of the year assumingly because the company must already know how much vacation the employee, in fact, took during that year.
Although contract interpretation is a question of law, "when the contract terms are ambiguous[,] construction of terms becomes a question of fact." Dubis v. East Greenwich Fire Dist.,754 A.2d 98, 100 (R.I. 2000) (quoting Clark-Fitzpatrick,Inc./Franki Found. Co. v. Gill, 652 A.2d 440, 443 (R.I. 1994)). To the extent that the section is ambiguous, the Court will accord great deference to the Hearing Officer's construction of the provision and will not substitute its judgment on questions of fact for that of the Hearing Officer. Sec. 42-35-15(g); Arnold,822 A.2d at 167; see also Auto Body Ass'n of R.I. v. Stateof R.I. Dep't of Business Regulation, 996 A.2d 91, 97 (R.I. 2010) (finding that in the context of statutory interpretation, the superior court should review only whether the agency's interpretation is clearly erroneous or unauthorized).
The Court finds that with one exception, the CBA clearly required Appellant Bessett to *Page 14 
work at least twenty-five days in 2008 before being entitled to receive pay for vacation time he did not take in 2007. Likewise, the CBA required Bessett to work twenty-five days in 2009 to receive pay for vacation time he did not take in 2008. To be exempt from that rule, Bessett would have had to give notice of his intent to retire in December 2008 and would have had to retire as of January 1, 2009. The ambiguity does not destroy the clarity of that requirement.
Even if it rendered the provision ambiguous, the Court would construe the intent of the parties forming the contract to require a non-retiring employee to work at least 25 days before qualifying for vacation pay based upon vacation time accrued the previous year. As to retiring employees who meet the requirements of the CBA, they would be entitled to receive vacation pay after they retire based upon vacation time accrued the previous year. To interpret the provision in any other way would lead to an absurd result. Vacation pay is based upon unused vacation time. No employee or employer can calculate unused vacation time until the employment year ends.
 B The Claims Properly Before the Agency
The clearest understanding of the nature of Appellant's claims comes from a review of his complaint. Bessett complains that he did not receive compensation for vacation time he accrued in 2007. Under the CBA, he would have been entitled to receive this compensation if he had worked at least 25 days in 2008.
The Court notes that the parties, including the settling parties, blurred these issues in the presentation of evidence and in their appellate briefs. The Court finds no basis for viewing any claims or appeal brought by Bessett beyond that which he set forth in his complaint.
The Court notes that Rhode Island General Laws 42-35-9(a) requires notice in a *Page 15 
contested administrative proceeding. Specifically, this notice must include:
 "(3) A reference to the particular sections of the statutes and rules involved;"
 (4) A short and plain statement of the matters inserted. If the agency is or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved and detailed statement shall be furnished." Sec. 42-35-9(b)(3)-(4).
This requirement is intended "to assure that a party is apprised of the nature of the hearing so that he can adequately prepare."Correia v. Norberg,120 R.I. 793, 801, 391 A.2d 94, 98 (1978) (citing Davis,Administrative Law Treatise § 8.05 at 530 (1958)); see alsoMullane v. Ctr. Bank Trust Co, 339 U.S. 306 (1950) (stating that the notice must "be of such nature as reasonably to convey the required information"); Koch Administrative Law andPractice § 5:32 ("The adequacy of the notice necessarily depends on the circumstances of the particular adjudicative process."). This information must "draw attention to, among other things, the subject matter to be considered at the hearing." Providence GasCo. v. Burke, 119 R.I. 487, 503, 380 A.2d 1334, 1342 (1977). Furthermore, administrative pleadings are treated like civil pleadings; the private party must understand the issues and be afforded a full opportunity to meet the charges. Citizens StateBank of Marshfield, Mo. v. Federal Deposit Ins. Corp.,751 F.2d 209, 213 (8th Cir. 1984). Additionally, the failure to raise an issue in the complaint may "not preclude findings [on that issue] so long as it has been fully and fairly litigated during the course of the Board proceeding." National Labor RelationsBd. v. National Med. Hosp. of Compton,907 F.2d 905, 910 (9th Cir. 1990) (citing George C. FossCo. v. National Labor Relations Bd., 752 F.2d 1407, 1411 (9th Cir. 1985); Industrial, Technical Prof'l Emp. Div. v. NationalLabor Relations Bd., 683 F.2d 305, 307-08 (9th Cir. 1982)).
In this case, Appellant provided New Penn with sufficient notice that he was seeking *Page 16 
vacation pay accrued in 2007.
The evidence suggests that Bessett did not work at all in 2008 and received Worker's Compensation benefits throughout that year. To the extent, if at all, he seeks payment for vacation time he would have earned in 2008 had he worked that year, such claim would have failed on its merits under the CBA. He would not have accrued any vacation time in 2008.
The Hearing Officer denied all claims asserted by Bessett. Accordingly, even if he considered claims beyond the complaint, any error on his part would be non-prejudicial to his final determination on Bessett's claims.
 C Evidence Received in Post-Hearing Brief
Appellant argues that the Hearing Officer erroneously concluded that he received vacation wages in 2007. He contends that these findings were based solely upon information contained in the Respondent's post-hearing brief. Bessett asserts that the Hearing Officer should not have accepted evidence presented in this fashion. The Court agrees.
The Court notes that remand is unnecessary in this case because the issues raised by the improper evidence were irrelevant to the issues in dispute. From an evidentiary standpoint, the evidence that Bessett was paid in 2007 had no relevance to the issues before the agency, and however presented, such evidence constituted "red herrings."[11]
Employees are paid for vacation time they did not use during the previous year. If paid in 2007, Bessett would have been receiving pay for vacation time that accrued in 2006. Bessett has not sought payments for vacation time accrued in 2006. *Page 17 
The sole issue as it relates to Bessett is whether he is entitled to receive compensation for vacation time he accrued in 2007, which payment would have been made in 2008.
Despite finding that the improper evidence did not infect the outcome of the case, the Court considers it important to address the practice of permitting evidence outside the record.
At the conclusion of the hearing, the record was effectively closed, and parties could only introduce new evidence if a party moved to reopen the case or the hearing officer held another hearing. See Arnold v. Lebel, 941 A.2d 813, 821 (R.I. 2007) (stating the necessity of facts being included "on the record if the hearing officer plans to base his final decision on such facts");see also DeMelo v. Zompa, 844 A.2d 174, 176 (R.I. 2004).
At the administrative hearing, New Penn raised the issue of whether Appellant Bessett had already received the vacation pay that he was seeking at the hearing. (Tr. at 32) When New Penn requested the opportunity to review its records and inform the Hearing Officer of its findings on the issue, the Hearing Officer told New Penn's lawyer that he should "check your records to verify that." Id. at 32-33. Without continuing the hearing to receive additional evidence on this issue, the Hearing Officer concluded the proceeding. He invited additional evidence without providing a vehicle to New Penn to properly introduce the evidence and without affording Bessett the opportunity to confront it.
By accepting this post-hearing evidence, the Hearing Officer deprived Appellant of his right to contest and respond to evidence presented because he never allowed him to respond to this evidence on the record. See Arnold, 941 A.2d at 821.
DLT procedures specify that the Hearing Officer may "reopen" the record for "fraud, mistake, collusion or substantial new evidence." Rhode Island Department of Labor and Training, Rules of the Board of Review, Rule 13 (2001) (affecting requests for hearings based on *Page 18 
§28-41-18, § 28-44-39(b), § 28-40-7, § 28-43-13, and § 28-43-14). The Court notes that New Penn was placed on notice that the Appellant Bessett was seeking pay for vacation time accrued in 2007 and should have been prepared to address that issue at the administrative hearing. (Bessett Complaint.)
The rules of evidence in a contested case before an administrative agency are set forth in G.L. 1956 § 42-35-10, [12] which gives the hearing officer discretion to ascertain the necessary facts. In an agency adjudication, however, it is established that "no litigious facts should reach the decision maker off the record." Arnold v.Lebel, 941 A.2d at 821. Moreover, "[u]nless the parties are given notice and an opportunity to respond on the record . . . [a] hearing officer may not communicate with anyone . . . about contested adjudicatory facts." Id.; see also Sec. 42-35-9(c) ("Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.") Thus, in rendering his or her decision, a hearing officer is limited to a review of the evidence received and matters officially noticed. Sec. 42-35-9(g). Despite any differences in an evidentiary standard, an agency decision which lacks "record evidence or competent testimony to support a claim" cannot be upheld. S S Liquor Mart,Inc. v. Norberg, 461 A.2d 393, 393-94 (R.I. 1983).
The Rhode Island Supreme Court has held that a record will not be complete if impermissible ex parte communications have resulted in information not available to all parties. Champlin's RealtyAssocs. v. Tikoian, 989 A.2d 427, 449 (R.I. 2010). The Court has also *Page 19 
addressed the role of post-hearing briefs following a civil proceeding. See DeMelo, 844 A.2d at 176. In that case, the plaintiff was prohibited from presenting a post-trial memorandum which contained several documents that had not been presented at trial because "absent a motion to reopen the case, [a party] may not present additional evidence after the parties have rested." Id.
When a decision is clearly erroneous as a result of a hearing officer's reliance on this post-hearing evidence, a court may "reverse, modify, or remand the agency's decision." SeeNolan, 755 A.2d at 805. In Champlin's Realty Associates, the Rhode Island Supreme Court found that "the interests of justice are best served by a remand" when impermissible ex parte communications occurred between members of the Coastal Resources Management Council. 989 A.2d at 449. The Court, however, acknowledged that "there are instances in which a remand to an administrative agency may not be the most appropriate remedy."Id.
Having found that the improper evidence was irrelevant to the issues before the agency, the Court does not order remand.
 D Appellant Bessett's Claim for Vacation Wages
Appellant Bessett contends that the Hearing Officer erred in determining that he was not entitled to 2007 and 2008 vacation wages. The record reflects that Appellant Bessett worked twenty-eight weeks in 2007 and then received Workers' Compensation benefits for the rest of the year. (Tr. at 23.) Bessett argues that he is owed his 2007 vacation wages because he worked twenty five days in that year. He disputes the Hearing Officer's reliance on the Respondent's post-hearing brief. In that brief, New Penn offered evidence that it paid Appellant Bessett for this vacation time. As noted earlier, the Court rejects the evidence offered in the post-hearing brief for the reasons set forth earlier in this decision. *Page 20 
Without considering the improper evidence submitted in the form of a post-hearing brief, the Court notes that the record reflects that Bessett was on Worker's Compensation for all of 2008.Id. at 23-24. Specifically, Appellant Bessett testified during the DLT hearing that he did not work at least twenty five days in 2008 because he was on workers' compensation as a result of tearing "a rotator cuff three years in a row." (Tr. at 23-24.) He further testified that he came off workers compensation on January 8th or 20th in 2009.
In his complaint, Bessett claims that he is entitled to receive four weeks vacation pay for having worked "from 1/1/2007 to 11/20/07" (Bessett Complaint.) However, under the CBA, unless he worked at least 25 days in 2008, he would not be entitled to receive such pay.
Although Bessett's complaint sought only vacation pay for time accrued in 2007, the Court will address his claim, if any, for vacation pay he would have accrued as an employee of New Penn during the calendar year, 2008. Since he was on Worker's Compensation during that entire year, he would not be entitled to accrue vacation time for which he would later be entitled to recover vacation pay.
The amount of benefits an employee receives under the Worker's Compensation statute is impacted by his history of receiving vacation pay. See G.L. 1956 § 28-33-20(a)(1). That statute provides in pertinent part:
 "For full-time or regular employees, by dividing the gross wages, exclusive of overtime pay, provided . . . that bonuses shall be averaged over the length of employment . . . earned by the injured worker in employment by the employer in whose service he or she is injured during the thirteen (13) calendar weeks immediately preceding the week in which he or she was injured, by the number of calendar weeks during which, or any portion of which, the worker was actually employed by that employer, including any paid vacation time. . . ." Id. (Emphasis added).
Under the statutory scheme, "vacation pay is an incident of employment." Cole v. Davol, Inc.,679 A.2d 875, 878 (R.I. 1996) (citing Robidoux v. Uniroyal,Inc., 116 R.I. 594, 598, 359 A.2d 45, 48 (R.I. 1976)). *Page 21 
Thus, "employees are entitled to vacation pay whether or not they have sustained a compensable injury." Id. (citing 1C Arthur Larson Lex Larson, The Law of Workmen'sCompensation § 57.46(c) at 10-270-73 (1996)). Accordingly, when vacation pay is an accumulated benefit of employment, this pay must be included in workers' compensation payments. See Smith v.Colonial Knife Co., Inc., 731 A.2d 724, 725 (R.I. 1999) (holding that "holiday pay should be included in the calculation of gross wages"); Cole, 679 A.2d at 878 (finding that vacation pay should be included when computing both pre-injury and post-injury earnings because it is an accumulated benefit of employment);Mod. Work Comp. § 201:28 (stating that some states include vacation and holiday pay in the determination of wages for workers' compensation benefits).
At the same time, it is well established policy in Rhode Island that an employee or retiree may not receive identical pay or benefits from one source that they are simultaneously receiving from another source. See Romano v. Retirement Bd. of Emps.' Ret.Sys., 767 A.2d 35, 38 (R.I. 2008) (recognizing that the relevant legislation was necessary to restrict "the proclivity of some public pensioners to indulge in what is colloquially referred to as `double dipping' — that is, the simultaneous receipt by retired public employees of both a salary for state reemployment and a state pension" (quoting Retired Adjunct Professors v. Almond,690 A.2d 1342, 1347 (R.I. 1997))); St. Pierre v. Fulflex,Inc., 493 A.2d 817, 818-19 (R.I. 1985) (finding that an employee cannot receive both workers' compensation and unemployment benefits). For example, in Deus ex rel. Deus v. S.S. Peter andPaul Church, an injured worker could not bring a claim for her injury when she was also receiving workers' compensation because she did not have the "right to `double dip.'"820 A.2d 974, 977 (R.I. 2003). *Page 22 
Bessett's claim, if any, for vacation pay for vacation time accrued while he was on Worker's Compensation must fail. His claim for vacation pay for vacation time he accrued during 2007 must also fail. Bessett is not seeking compensation for vacation pay he would have received in 2007 reflecting unused vacation time from 2006. He is seeking vacation pay he would have received in 2008 reflecting unused vacation time from 2007. In accordance with the CBA, in order to recover that payment, he would have had to work at least 25 days in 2008. The evidence suggests that he did not work at all during the calendar year 2008. Accordingly, his appeal is denied.
 III Conclusion
After a review of the entire record, this Court finds that the Hearing Officer's decision was affected by error of law and was made in part upon unlawful procedure. Nonetheless, the Court finds that the ultimate decision to deny Appellant's claim for vacation pay was correct. See DeSimone Electric, Inc. v. CMG, Inc.,901 A.2d 613, 620-21 (R.I. 2006) (finding that a court may affirm "the orders and judgments of a trial court when the reasons given by the trial court are erroneous in circumstances in which there are other valid reasons to support the order or judgment appealed from" (quoting Levine v. Bess Eaton Donut Flour Co.,705 A.2d 980, 984 (R.I. 1998))) (citing Jordan v. Jordan,586 A.2d 1080, 1085 (R.I. 1991)); State v. Oliveira,774 A.2d 893, 917 (R.I. 2001) (quoting Gross v. State, Div. ofTaxation, 659 A.2d 670, 672 (R.I. 1995)). For the reasons stated herein, this Court affirms the DLT decision denying Appellant vacation pay. Counsel shall submit appropriate judgment for entry and shall provide the appropriate stipulation withdrawing the appeals of Horbet and D'Abrosca.
[1] Appellant Horbet spelled his name "Raymond Horbert" at the administrative hearing and in his complaint with DLT. (Admin. Hr'g Tr., July 30, 2009, at 5; Complaint of Horbet, January 27, 2009.) However, the Hearing Officer spelled his name "Horbet" which spelling appears in Appellants' complaint to this Court. In this decision, the Court will employ the spelling contained in the Superior Court complaint.
[2] Appellant Bessett spelled his name "Joseph Bessette" at the administrative hearing and in his complaint with DLT. (Admin. Hr'g Tr., July 30, 2009, at 23; Complaint of Bessett, January 27, 2009.) However, the Hearing Officer spelled his name "Bessett" which spelling appears in Appellants' complaint to this Court. In this decision, the Court will employ the spelling contained in the Superior Court complaint.
[3] In particular, Horbet and D'Abrosca focused much of their appeal on the argument that New Penn should be estopped from asserting that they failed to comply with the terms and conditions of the CBA. That argument was rendered moot when they settled their claims against New Penn.
[4] The record on appeal does not identify Appellants' union by name. However, the Court notes that Teamsters Local, No. 404 Springfield, MA is referenced in Respondent's Exhibit 1, a decision and briefs concerning a grievance filed by an employee not a party to the instant controversy. (Tr. at 28, 29)
[5] The record that was transmitted to the Court in connection with the instant appeal did not include these complaints. On December 7, 2010, by agreement of the parties, the Court permitted them to supplement the record to include the complaints.
[6] The union representative, Joseph Boyajian, signed the complaints for both Appellants Horbet and Bessett.
[7] From the hearing transcript, it appears the record should contain two exhibits of different memoranda authored by Horbet and sent to his Business Agent at Local 251, Joe Boyajian. See
Tr. at 10, 12-13. Horbet testified to writing to Mr. Boyajian on two different occasions regarding separate conversations that he had had with Respondent's Providence Terminal Manager, Bart Wagner. Seeid. Upon review, this Court finds although there are two exhibits from Horbet in the record, they are nevertheless identical versions of the same memorandum. Compare Employee Horbet No. 1, Memorandum to Joe Boyajian, Dec. 10, 2008, with
Employee Horbet No. 2, Memorandum to Joe Boyajian, Dec. 10, 2008.
[8] This evidence was clearly improper. However, following a review of the agency decision, the Court is satisfied that the Hearing Officer did not give this unrelated arbitration decision and briefs any weight in determining the issues before him in this case.
[9] The Hearing Officer suggested that the parties address the following issues in their post-hearing brief: (1) the weight that should be given to an arbitration decision submitted by the Respondent; (2) the proper interpretation of the CBA; (3) the effect, if any, of the statements of management personnel on the application of the CBA; and (4) whether the requirements to collect vacation pay are the same for an individual on total disability and workers' compensation as for other full-time employees.Id. at 50-51.
[10] It is interesting to note that the CBA does not require the retiring employee to give notice by any particular date in December.
[11] Something intended to divert attention from the real problem or matter at hand. The Random House Dictionary of the EnglishLanguage 1616 (2d. 1986).
[12] This provision provides in pertinent part: "The rules of evidence as applied in civil cases in the superior courts of this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men and women in the conduct of their affairs." Sec. 42-35-10(1).
 *Page 1