ARTHUR VICK *vs.* ADEUS AUBIN.

ADEUS AUBIN *vs.* ARTHUR VICK.

MARCH 22, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

FLYNN, C. J. These are two proceedings under the workmen's compensation act, general laws 1938, chapter 300.

The first case, Vick *v.* Aubin, is a petition by the employer to review a preliminary agreement under which the employee was receiving ordinary compensation for total disability at the rate of $20 per week. The second case, Aubin *v.* Vick, is the employee's petition, under the provisions of article II, §12, of the act to obtain specific compensation, in addition to all other compensation, on the ground that his right arm has been rendered permanently stiff so as to be useless. The two cases were heard together in the superior court, and thereupon decrees were entered reducing the employee's compensation from total to partial disability at the rate of $11 per week and denying his petition for additional specific compensation. The cases are before this court on the employee's appeal from the decree in each case.

The following facts are undisputed. Adeus Aubin, the employee, was injured on August 13, 1941 by accident arising out of and in the course of his employment by Arthur Vick. While working as a carpenter he fell from a roof and injured his right arm and hand. Thereafter a preliminary agreement was entered into by the parties whereby the employee's compensation, based upon an agreed average weekly wage of $47, was fixed at the rate of $20 per week for the duration of total disability. In addition thereto another agreement was entered into whereby specific compensation of $20 weekly for eighteen weeks was awarded under the act for the permanent loss of use of the little finger on the right hand. Both agreements were approved by the director of labor.

Prior to Aubin's employment as a carpenter he had operated for his wife, or for himself and wife, the "Welcome Cafe," so called, which was licensed to sell liquor but at which no food was served. He then was paying a bartender $15 per week to assist him, and from his own services as bartender and manager was making about $30 weekly.

After he began to work for Vick, he continued to operate the cafe and to pay a bartender $15 a week to help him. When not actually carpentering, he served as bartender and general manager of the cafe where he worked forty to fifty hours a week. As part of his work he drew beer from a tap and served it, made change, washed glasses, sold cigarettes, ordered all supplies, paid bills, and generally managed the cafe's business. From such services he averaged about $25 a week for himself.

The medical witnesses agreed as to the existence of a permanent bone or tendon block in the employee's right elbow as a result of the fracture. They did not agree as to the extent of the limitation and disability caused by that injury. There was testimony for the employee, in substance and effect, that the right elbow was limited to 90 degrees of flexion and 120 degrees of extension; that at the time of the trial flexion was five degrees less than when he was first examined, which condition was permanent; that surgery was inadvisable; and that so far as carpentering was concerned, and probably for all hard work and practical purposes, the arm was useless, although the shoulder and wrist admittedly were entirely free and the muscles of the arm were not atrophied.

On the other hand an orthopedic specialist testified for the employer that the disability of the right arm because of a block at the elbow was then about 50 per cent; that it had been improved and probably would end in a permanent disability of about 30 per cent; that considering the limitation at the elbow the position of the arm was ideal for the purposes of using it; that the employee could do many things in the carpentering trade, including the sawing of wood if it were properly placed; that he had free move-

ment in the shoulder, wrist and all fingers except the little one; that there was very little atrophy in the arm muscles, which were of good tone; and that the arm could and should be used, although it was not as useful as it normally was before the accident.

With the aid of the employee all the doctors who testified personally demonstrated their testimony before the trial justice. These demonstrations included testing his hand grip, flexing his elbow, picking up coins of various sizes from the top of a table, and lifting a large inkwell with his right hand without assuming an especially abnormal posture.

The trial justice found that the employee's arm was not so stiff as to be useless, though it was permanently injured, and that he was gainfully employed as a bartender and manager of the cafe from which he was earning $25 per week for himself. On that basis he was awarded compensation for partial disability at the rate of $11 per week, which was computed in accordance with the statute as it existed at the time of the accident.

The employee first contends that there was no evidence to support the trial justice's finding that he was earning $25 per week for his services as bartender and manager in the cafe. He contends that if there is any evidence of his earnings for such services, as distinguished from profit or income on his investment, it was at most $15 per week; and that upon such basis he would have been entitled to maximum compensation for partial disability, which he claims would be 60 per cent of the difference between the said $15 and the average weekly wage in accordance with G. L. 1938, chap. 300, art. II, §11, as amended by public laws 1942, chap. 1246.

In our opinion the employee's first contention cannot be sustained. A review of the evidence in the transcript leads us to the conclusion that there was legal evidence, direct or by reasonable inference, to support the trial justice's finding that the employee was earning for himself $25 a week as distinguished from income or profit, in whole or part, from his investment. There was his own testimony

to the effect that there were no profits; that he was continually borrowing to keep the business going; that he was working forty to fifty hours weekly as bartender and manager, doing practically all the things usually performed by a bartender in such a business; and that for his services he was getting $25 weekly for himself. In view of such evidence, the finding is conclusive under the act as no question of fraud appears.

The employee secondly contends that, assuming there was evidence to support the finding that he was actually earning $25 per week, the trial justice nevertheless erred in failing to compute the compensation on the basis of an average weekly wage equal to the combined earnings of the employee from the two jobs which he was performing at the time of the accident. In other words, he claims that the total earnings from the two jobs, carpenter and bartender, should be taken as his average weekly wage, and that on such basis the compensation for partial disability should have been $18 per week.

We do not think that the question underlying this contention is properly presented in the instant case. The average weekly wage of the employee as fixed by the parties in the preliminary agreement approved by the director of labor was $47. Such agreement has not been altered by any proceeding under the act. The employee filed no petition to review it, as he might have done under G. L. 1938, chap. 300, art. III, §13, as amended by P. L. 1941, chap. 1064, on the ground that compensation had been based upon an erroneous wage rate. The employer's instant petition to review that agreement, therefore, is the only one before us and is based solely on the ground that the employee's incapacity had substantially diminished or ended. Whether the employee may combine all his earnings in establishing his average weekly wage was therefore not properly raised in this proceeding and is not decided.

On the issues before the trial justice the average weekly wage was $47 as fixed in the agreement, which had the force of a decree; and the compensation for partial disability, as

found by the trial justice, was to be computed on that average weekly wage in accordance with the statute as it existed at the time of the accident. That statute was G. L. 1938, chap. 300, art. II, §11, which provided that compensation for partial incapacity would be equal to *one-half* the difference between an employee's average weekly wage and the amount which he was able to earn thereafter, but not more than $13 a week. Therefore the employee's contention that he was entitled to a sum equal to 60 per cent of such difference is based upon an amendment of that statute, P. L. 1942, chap. 1246, which was not in force at the time of the accident.

The employee's third contention deals with the decree denying his petition for additional specific compensation for the alleged permanent loss of use of his right arm. He contends that the trial justice erred in finding in effect that the right arm must be entirely useless before he would be entitled to the specific compensation for the permanent loss of use of his arm under the schedules in the act in force at the time of the accident. G. L. 1938, chap. 300, art. II, §12, as amended by P. L. 1941, chap. 1056. That section reads in part as follows: "In case of the following specified injuries there shall be paid in addition to and concurrently with all other compensation provided for in this chapter a weekly payment equal to one-half of the average weekly earnings of the injured employee, but in no case more than $20.00 nor less than $8.00 a week . . . 'Where any bodily member or portion thereof has been rendered stiff so as to be useless, compensation in accordance with the above schedules shall be paid as if the member or portion thereof had been severed completely.' "

There is no provision therein authorizing recovery for any amount of stiffness other than appears in the above-quoted language. In the absence of any such definition or qualification, we should give the words of the statute their ordinary meaning. *Keyworth* v. *Atlantic Mills,* 42 R. I. 391. That case involved an employee's petition for specific com-

pensation for the entire and irrecoverable loss of sig' one
eye. The testimony showed that only about 10 ent
of normal vision was left in the eye, and that it was to
a limited extent for certain purposes but that thi of
vision was substantially of no vocational value. rt
held, however, that "the words of the statute mu en
in their ordinary sense and that their meaning i To
say that this statute was designed to go any fu an
to provide for additional compensation for injuries which
resulted in total and complete loss of sight would amount to
a distortion of its language." The legislature thereafter
amended that section to provide that "the reduction to one-
tenth or less of normal vision with glasses" warranted the
payment of specific compensation. P. L. 1936, chap. 2290,
sec. 7, and P. L. 1941, chap. 1056.

Since the legislature has not added any comparable stand-
ard to measure a limitation of motion of the kind involved
in the instant case, the *Keyworth* case, *supra,* is in point
as to the effect to be given to similar statutory language
that is not ambiguous. Moreover, since specific compensa-
tion for loss of use of a bodily member or part thereof is
awarded in addition to all other ordinary compensation, and
without regard to the employee's loss of earning capacity
therefrom, it would appear that such compensation was
intended to be in the nature of arbitrary damages. At any
rate, whatever may be said for a case where the employee's
arm has been made so stiff as to be useless for all practical
purposes, we do not think the legislature intended to ex-
tend the benefits of this section to an employee where, as
here, the trial justice has found on conflicting evidence
"That neither the petitioner's right arm nor any portion
thereof has been rendered stiff so as to be useless."

But even if we were to apply to the instant case
a standard of limitation similar to that which the legislature
itself added to measure specific compensation for the per-
manent loss of vision, namely, proof of a reduction to one-
tenth or less of normal functioning, we could not disturb

the decree entered herein. There was evidence, if believed, that this employee's disability was only 50 per cent of normal at the time of trial, and that it would probably end permanently in a disability of only 30 per cent of normal. Therefore the sufficient answer to the petitioner's contention is that the testimony concerning the extent of disability existing in the employee's right arm, due to limitation of motion at the elbow, was conflicting; that the trial justice specifically found that the arm was not so stiff as to be useless for all practical purposes within contemplation of the statute; and that, even if we apply the standard expressly provided by the legislature in an analogous case of specific compensation for permanent loss of vision, the evidence and findings here would preclude us from saying, as a matter of law, that the decree should be reversed.

We have examined the cases presented on this point by the employee, and we find that the principles of law recited therein, considering the particular statutes and evidence involved, are not inconsistent with our conclusion. Examples of such cases are *Chovic* v. *Pittsburgh Crucible Steel Co.,* 71 Pa. Super. 350, and *Meley's Case,* 219 Mass. 136, the latter being cited with approval in *Mark Mfg. Co.* v. *Industrial Comm'n.,* 286 Ill. 620, and in *Floccher's Case,* 221 Mass. 54. It is clear that those cases were considered by the trial justice but he specifically found in the instant case that "It would be idle to say that the normal use of petitioner's hand and arm has not been greatly diminished. Also it would be highly inaccurate, it seems to the Court, to say that all use of his members has gone or even to say that all but the merest minimum of use has been lost."

In our opinion the trial justice was not in error in his findings of fact upon the employer's petition to review, or in his findings of fact and the application thereto of the pertinent statute in connection with the employee's petition for specific compensation for the loss of use of his right arm.

The employee's appeal in each cause is denied and dis-

missed, each decree appealed from is affirmed, and each cause is remanded to the superior court for further proceedings.

*Henry M. Boss* and *Francis W. Conlan,* for employer, Arthur Vick.

*Sherwood & Clifford (Sidney Clifford* and *Raymond E. Jordan,* of Counsel), for employee, Adeus Aubin.