401 A.2d 1281.

JOSE C. CABRAL *vs.* CONVERSE RUBBER COMPANY.

MAY 29, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.   This is an appeal by the employer, Converse Rubber Company (Converse), from a decree of the Workers' Compensation Commission affirming a decree of the trial commissioner adjudging Converse in contempt for failure to comply with the provisions of a supplemental agreement calling for the payment of partial compensation to the employee, Jose C. Cabral. We affirm.

On March 28, 1974, the employee suffered a crushing injury to the fingers of the left hand. He received compensation for total incapacity until he returned to work for regular wages and a settlement receipt was executed and filed. When Converse's plant shut down, however, he was placed on a second preliminary agreement calling for the payment of partial compensation. That agreement, executed on June 9, 1975, provided as follows:

> "That partial compensation shall be paid at the rate of $ various per week based on an average weekly wage of $171.16. This compensation shall be payable to the said employee commencing May 27, 1975 for duration of incapacity or until otherwise terminated in accordance with the provisions of the Workmen's Compensation Act * * *."

The employee was paid the maximum partial compensation until the plant reopened on June 1, 1975. For several weeks after returning to work the employee earned wages at least equal to his pre-injury earnings, and accordingly no partial compensation was paid. Beginning with the week ending October 12, 1975, however, and continuing until June 20, 1976, there were several weeks when the employee did not receive maximum partial compensation, but instead was

paid either no partial compensation or partial compensation based upon a formula established by Converse.

On January 29, 1976, the employee filed a petition to enforce the agreement. At the hearing conducted before the trial commissioner, Converse explained the formula it had employed: the number of hours worked in a week was multiplied by the employee's rate of pay at the time of the injury. If this computed figure was less than the amount actually paid the employee during the week in question, no partial compensation was paid. The trial commissioner found that this formula was clearly at variance with the statutory mandate contained in G.L. 1956 (1968 Reenactment) §28-33-18. Accordingly, he entered a decree adjudging Converse in contempt since the week ending October 12, 1975, for failure to comply with the still-binding provisions of the outstanding preliminary agreement. The trial commisioner ordered Converse to pay the employee partial compensation at the statutory rate with credit for the payments already made.

The full commission affirmed, noting that there was no indication in the record that the employee had executed a suspension agreement and receipt, nor had Converse taken any affirmative action seeking relief. The commission stressed that subsequent to the execution of the second preliminary agreement no determination had been rendered stating that the employee's incapacity had ended, and therefore Converse remained obligated to comply with the outstanding agreement.

On appeal before us, Converse places particular emphasis upon the uncontradicted fact that the employee's post-injury reduction in wages was caused by two factors unrelated to his original injury — his entire work shift worked fewer hours and he was absent from work for an extended period because of a non-industrial accident. Converse asserts that an employee is not entitled to compensation for partial incapacity if his reduction in earnings is solely attributable to such factors. Converse also notes that on several occasions the

employee's post-injury earnings exceeded his pre-injury earnings, indicating that the employee no longer suffered a diminution in earning capacity.

Section 28-33-18 prescribes the exclusive formula to be utilized when computing the weekly compensation for partial incapacity. The statute in effect at the time of the injury states that an employer must pay a partially incapacitated employee an amount equal to 60 percent of the difference between his average weekly wages, earnings, or salary before the injury and the weekly wages, earnings, or salary that he earned thereafter, but no more than the maximum rate for total incapacity.[1] The statutory language in §28-33-18 is plain and unambiguous, expressing a definite and sensible meaning. Thus, the statute must be applied literally. *See Podborski* v. *Haskell Manufacturing Co.*, 109 R.I. 1, 8-9, 279 A.2d 914, 918 (1971). By adopting its own unique method of calculating compensation benefits, Converse in effect seeks to establish unilaterally the employee's earning capacity. As we indicated in *Podborski,* when the Legislature amended the Workers' Compensation Act in 1969, it removed from the commission the power to establish an earning capacity for a partially incapacitated worker. *See id.* at 3-4, 279 A.2d at 915-16. Clearly, an employer also lacks such power.

Converse's argument that the employee is no longer entitled to benefits because his reduction in earning capacity was occasioned solely by factors unrelated to his compensable injury lacks merit for several reasons. First, it ignores the legislative intent embodied in our workers' compensation system. It is fundamental that the right to compensation is predicated upon a reduction in earning capacity caused by

---

[1]Public Laws 1974, ch. 270, §1 amended §28-33-18 by increasing the differential rate to 66⅔ percent. This amendment took effect on September 1, 1974; the employee was injured in May 1974. Compensation benefits are computed in accordance with the statute extant at the time of the injury. *See, e.g., Robidoux* v. *Uniroyal,Inc.*, 116 R.I. 594, 595 n.1, 359 A.2d 45, 46 n.1 (1976); *Gomes* v. *Orr & Son,* 78 R.I. 96, 99, 79 A.2d 618, 620 (1951); *Vick* v. *Aubin,* 73 R.I. 508, 513, 58 A.2d 109, 111 (1948).

an injury, rather than the injury itself. *See, e.g., Accioli v. Josal Construction Co.*, 112 R.I. 215, 218, 308 A.2d 498, 499 (1973); *D'Iorio v. United States Rubber Co.*, 88 R.I. 369, 373, 148 A.2d 683, 685 (1959). Our opinion in *Nardolillo v. Big G Supermarket, Inc.*, 111 R.I. 751, 306 A.2d 844 (1973) is particularly instructive. In *Nardolillo,* the employer contended that an employee who refuses to accept beneficial rehabilitive employment that he is capable of performing is not entitled to partial compensation. Rejecting that assertion, we noted that the 1969 amendment to §28-33-18 eliminated the requirement that an employee unsuccessfully conduct a bona fide search to find work he is capable of performing, or accept such work from his former employer, as a prerequisite of partial compensation. We stated that by amending §28-33-18:

> "[t]he Legislature intended to declare its policy to be that so long as a partially incapacitated employee remains out of work, *whatever the reason,* he is entitled to the compensation ordinarily paid for total incapacity." *Id.* at 754-55, 306 A.2d at 847. (Emphasis added.)

In its brief Converse cites numerous cases from other state jurisdictions to bolster its argument. These cases are inapposite because they construe statutes textually different from our compensation act. In 1950 our act was amended by inserting the phrase "which he earns thereafter," P.L. 1950, ch. 2628, in place of the former language, "which he is able to earn thereafter." This amendment reflected a changed view of the concept of earning capacity. The cases cited by Converse all construe statutes nearly identical to our pre-1950 Workers' Compensation Act. *Compare* G.L. 1956 (1968 Reenactment) §28-33-18 *with e.g., Conn. Gen. Stat. Ann.* §31-308 (West Supp. 1979); *Ill. Ann. Stat.* ch. 48, §138.8(d) (Smith-Hurd Supp. 1978); *Me. Rev. Stat.* tit. 39, §55 (1978); *Mass. Gen. Laws Ann.* ch. 152, §35 (West. Supp. 1979), *and Mich. Stat. Ann.* §17.237 (361) (1975).

Finally, and most significantly, Converse's attempt to unilaterally modify its obligation under the outstanding pre-

liminary agreement is foreclosed by the well-established principles most recently enunciated in *Walker* v. *Kaiser Aluminum & Chemical Corp.*, 119 R.I. 581, 382 A.2d 173 (1978). In *Walker* we reaffirmed that an employee's return to work, even though it may signal a reduction in or an end of any impairment of earning capacity, does not entitle the employer to unilaterally modify or terminate its continuing obligation to pay weekly benefits under a preliminary agreement, order, or decree. *See id.* at 585, 382 A.2d at 176 and cases cited therein. Regardless of the employer's good faith or the equity of its formula in practical application, it lacks the authority to unilaterally determine the extent of partial incapacity. *See Frenier* v. *United Wire & Supply Corp.*, 83 R.I. 472, 477, 119 A.2d 724, 727 (1956). Rather, the employer must resort to a procedure made available under the Workers' Compensation Act to obtain affirmative relief from the obligation on the ground of partial or total recovery of earning capacity. *See Walker* v. *Kaiser Aluminum & Chemical Corp.*, 119 R.I. 581, 382 A.2d at 176 n.2. Accordingly, Converse could not simply modify its payment under the outstanding agreement. It must prove, via one of the authorized procedures, its allegation that the employee's earning capacity is no longer diminished.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission for further proceedings.

*Lovett & Linder, Raul L. Lovett,* for petitioner.

*Vincent J. Chisholm Law Officer, Vincent J. Chisholm, Howard L. Feldman,* for respondent.