WEHR, INC.

v.

Nancy TRUEX.

Nos. 96–218 M.P., 96–277 M.P.

Supreme Court of Rhode Island.

Sept. 30, 1997.

John Harnett, Carl J. Asprinio, Providence, for Plaintiff.

Michael D. Lynch, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

These consolidated cases come before us on cross-petitions for certiorari filed by both Wehr, Inc. (Wehr or employer), and Nancy Truex (Truex or employee) to review a final decree of the Appellate Division of the Workers' Compensation Court awarding benefits to Truex pursuant to the partial-disability statute, G.L.1956 § 28–33–18. We deny both petitions for certiorari and affirm the final decree of the Workers' Compensation Court Appellate Division. The undisputed facts insofar as pertinent to this appeal are as follows.

On April 25, 1994, both parties agreed to the entry of a consent decree finding that between February and September of 1993 Truex developed bilateral carpal tunnel syndrome in the course of her employment with Wehr. She was determined to be partially incapacitated as of September 21, 1993, and was entitled to receive workers' compensation benefits from that date forward. On July 21, 1994, Wehr filed a petition to review the consent decree, alleging that Truex's incapacity had ended. While Wehr's petition was pending, Truex entered a rehabilitation program at the Dr. John E. Donley Rehabilitation Center. After completing that program, she obtained work with another employer, Applied Energy, Inc. (Energy). Subsequently Wehr amended its petition and requested the establishment of an earnings capacity for Truex based on the thirteen weeks of wages she had earned while employed at Energy.

A trial justice of the Workers' Compensation Court heard the petition to review and found that Truex remained partially incapacitated and that Wehr had failed to demonstrate that she could return to her previous position at the company without risk to her health. He then calculated the benefits she was entitled to receive based upon her post-injury-earning *capacity* rather than on her actual postinjury *earnings*. That sum was

computed as $231.49, a thirteen-week average of Truex's wages earned while employed at Energy, exclusive of overtime pay. On August 15, 1995, the trial justice entered a decree embodying his decision, and both parties appealed. The Appellate Division reversed the decision of the trial justice in a final decree dated April 5, 1996. It held that Truex's benefits should have been based upon her actual wages earned rather than on her earning capacity. Specifically the Appellate Division held that the plain meaning of § 28–33–18 was that a partially incapacitated employee is to be paid a percentage of the difference between her preinjury wages and her postinjury wages.

"Since * * * the employee's post incapacity earnings varied from week to week during the time period that is part of the record * * * it is obvious that her partial incapacity benefit entitlement would likewise fluctuate weekly, in ratio to her actual earnings and the established average weekly base wage as provided in § 28–33–18."

Authority to set an earnings capacity for a partially incapacitated employee, the Appellate Division concluded, exists only when the employee refuses to accept suitable alternative employment. *See* § 28–33–18.2(c). It further held that the trial justice improperly excluded overtime pay from the calculation of Truex's postinjury wages because overtime pay had not been expressly excluded by the partial-incapacity statute. Section 28–33–18. Subsequently both parties filed petitions for certiorari, challenging separate parts of the final decree of the Appellate Division. Truex claims that the Appellate Division erred by including overtime pay in the calculation of her postinjury earnings, and Wehr objects to the use of actual postinjury earnings in computing benefits rather than a fixed average post-injury-earnings capacity.

 Section 28–33–18 prescribes the exclusive formula to be utilized when computing the weekly compensation due a partially incapacitated employee. *Cabral v. Converse Rubber Co.*, 121 R.I. 606, 609, 401 A.2d 1281, 1282 (1979). The amended version of that section in effect at the time of Truex's injury provides that an employer must pay a partially incapacitated employee an amount

"equal to seventy-five percent (75%) of the difference between his or her spendable average weekly base wages, earnings, or salary before the injury exclusive of overtime pay * * * and his or her spendable weekly wages, earnings, salary, *or* earnings capacity thereafter." § 28–33–18 as amended. (Emphasis added.)

The statute, however, fails to specify when the use of earnings capacity is preferable to that of actual earnings. Clearly in circumstances in which a partially incapacitated employee is not working or has refused suitable alternative employment, the only valid means of comparing his or her pre- and postinjury earnings is by the setting of an earnings capacity. Earnings capacity is defined as "the weekly straight time earnings which an employee could receive if the employee accepted an actual offer of suitable alternative employment." General Laws 1956 § 28–29–2(3)(i). Alternatively an earnings capacity can "be established by the court based on evidence of ability to earn." *Id.*

 In the present case Truex has accepted suitable alternative employment. It would seem logical, therefore, to use actual wages earned as the appropriate measure of postinjury wages in computing her workers' compensation benefits. If, as Wehr suggests, a fixed amount was utilized on the basis of Truex's theoretical earnings capacity, that sum could differ significantly from the amount of postinjury wages actually earned. Simply because § 28–29–2(3)(i) allows earnings capacity to be based on actual wages if an employee has worked at light duty for at least thirteen weeks does not alter the analysis that actual wages constitute a more accurate means of comparison than earnings capacity. It is well settled that our review of a decree of the Appellate Division is limited to a determination of whether that tribunal erred in deciding questions of law. General Laws 1956 § 28–35–30(a)(3); *see also Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367, 370 (R.I.1994). If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this court, and the decree of the Appel-

late Division must be sustained. *Claros v. Highland Employment Agency,* 643 A.2d 212, 214 (R.I.1994); *Maynard v. Rhode Island Hospital,* 536 A.2d 532, 534 (R.I.1988). In our opinion the Appellate Division did not err in declining to set an earnings capacity for an employee who received variable postinjury wages.

We are also of the opinion that the Appellate Division was correct in crediting the employer for wages actually earned by the employee, including overtime pay. In enacting § 28-33-18, the Legislature specifically excluded overtime pay from the calculation of preinjury earnings but not from the computation of postinjury earnings. The failure specifically to exclude overtime pay from postinjury wages in light of its earlier exclusion from preinjury earnings is significant and indicative of the Legislature's intent to include it in the computation of postinjury earnings. This court will not "interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication." *State v. Feng,* 421 A.2d 1258, 1264 (R.I.1980). In the present case § 28-33-18 would not fail of its essential purpose if we decline to infer the exclusion of overtime pay in the calculation of postinjury wages in determining an employee's workers' compensation benefits.

For the reasons stated, the parties' petitions are denied. The writs heretofore issued are quashed. The final decree of the Appellate Division is affirmed. The papers in the case may be remanded to the Workers' Compensation Court with our decision endorsed thereon.