May 11, 2022

**Supreme Court**

No. 2020-207-M.P.
(WC 20-6)

(Dissent begins on Page 16)

Freepoint Solar LLC          :

v.          :

Richmond Zoning Board of Review     :
        et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Freepoint Solar LLC        :

v.        :

Richmond Zoning Board of Review    :
      et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  The Town of Richmond (the town) petitioned[1]

this Court for the issuance of a writ of certiorari to review a Superior Court judgment

---

[1] The town was not a party to the proceedings before the Superior Court, where the plaintiff, Freepoint Solar LLC, appealed from a decision of the defendant, the Town of Richmond Zoning Board of Review.  The town filed a petition for certiorari with this Court to review the resulting Superior Court judgment.  Upon so filing, the petitioner in the case was listed on the docket as the zoning board, not the town. Following oral argument, this Court issued an order directing the parties to address in supplemental statements whether the zoning board had standing to maintain the petition for certiorari pursuant to this Court's opinion in *Hassell v. Zoning Board of Review of City of East Providence*, 108 R.I. 349, 275 A.2d 646 (1971).  In its supplemental statement, the town clarified that the town itself sought issuance of the writ, and therefore it had standing to maintain the petition. *See Town of East Greenwich v. Day*, 119 R.I. 1, 3, 375 A.2d 953, 954 (1977). The plaintiff has also conceded that the town had standing to bring the petition for writ of certiorari. Accordingly, we address the merits of this case.  We remind the parties and members of the bar of the obligation, particularly in light of the relatively recent move to

- 1 -

rendered in favor of the plaintiff, Freepoint Solar LLC (Freepoint).  The Superior Court reversed a decision of the Town of Richmond Zoning Board of Review (the zoning board) that denied Freepoint's application for a special-use permit to construct a solar energy system.  This Court issued the writ and ordered the parties to appear and show cause why the issues raised in this case should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

In November 2016, Freepoint entered into a binding option to lease 36 Woodville Road in Richmond (the site) for the purpose of constructing a solar energy system (the project).  Freepoint's plan was to build a 4.99MW(DC)/4.5 MW(AC) nameplate capacity ground-mounted photovoltaic (PV) solar facility on the site.  The site was zoned R-3, which, at the time Freepoint submitted its application, permitted solar energy systems by special-use permit.  During the time period relevant to this case, special-use permits for solar energy systems were

electronic filing, to "notify the Clerk of the Supreme Court of any inaccuracies in the titles assigned by the Clerk within seven (7) days after receiving notice of the docketing of the appeal" under Article I, Rule 12(b) of the Supreme Court Rules of Appellate Procedure.

- 2 -

specifically governed by § 18.34.030 of the Town of Richmond Code of Ordinances. Accordingly, in November 2018, Freepoint applied to the zoning board to obtain a special-use permit to construct the project.

In its application, Freepoint addressed how the project met the requirements of § 18.34.030 of the zoning ordinance. Relevant to our review, Freepoint specifically addressed the requirement in § 18.34.030-A, which mandated that the entire lot on which the solar energy system was to be located be within two miles of a utility substation (the utility substation requirement). *See* Town of Richmond Code of Ordinances § 18.34.030-A (May 15, 2018) ("The entire lot on which the solar energy system is located shall be within two (2) miles of a utility substation."). In satisfaction of the utility substation requirement, Freepoint represented that "[t]he entire subject parcel is located within two miles of a substation located in the vicinity of 530 Church Street, in Wood River Junction, RI and shown on Figure 3 in Appendix A." The specific substation referenced was operated by Amtrak (the Amtrak substation).

Over the course of 2019, the zoning board held multiple meetings on the application, both public hearings and work sessions. As was typical, the application was initially referred to the Town of Richmond Planning Board (the planning board). The planning board subsequently provided an advisory "Development Plan Review" concerning the project. In that advisory, the planning board made findings of fact

- 3 -

and recommended approval of the application subject to certain conditions, none of which are at issue on review before this Court. Notably, the planning board found that "[b]y code, the property is located within two miles of a substation (located at 530 Church Street, Wood River Junction)."

In May 2019 the zoning board held both a public hearing and a public work session on Freepoint's application. At those meetings, the zoning board, members of the public, and Freepoint representatives discussed concerns regarding, among other items, decommissioning costs, the potential for glare to negatively affect neighbors, the effect of the project on the character of the area and neighboring property values, ways to ameliorate the visual impacts of the project, and the project's compliance with the special-use permit requirements and the town's comprehensive plan. The issue of the utility substation requirement came up briefly while the zoning board discussed the special-use permit requirements, but that discussion focused on the requirements for ameliorating the visual impacts of the project.

At a second public hearing, in July 2019, a member of the public, William Boger, commented:

> "Section [18.34.030-A] is a concern. I did a little bit of research on this. This is the section that reads in the Zoning Ordinance for, specifically for solar energy systems. The entire lot on which a solar energy system is located shall be within two miles of a utility substation. The Zoning Ordinance does not provide a definition of

utility substation. * * * National Electric Code provides [a] definition of a utility substation as a substation which is a composite of switches and gears—it's electrical switching equipment. When the word utility is tagged on to utility substation, the utility then is the company that owns and maintains being a provider of that utility. By that definition, National Grid, being the provider of electricity in this area, would be the logical source for a utility substation."

Following Mr. Boger's comment, the zoning board and members of the public discussed the meaning of "utility substation" extensively. For the first time, the zoning board questioned the purpose and intent behind the utility substation requirement, lamenting the lack of definition for "utility substation" in the zoning ordinance. At the close of the meeting, the matter was continued.

A third public hearing on the application took place on October 28, 2019, after a formal request by Freepoint to reopen the matter for further public comment. The meeting was called to give Freepoint an opportunity to present evidence regarding whether the Amtrak substation was a "utility substation" for purposes of § 18.34.030-A of the zoning ordinance. Freepoint provided an expert witness, Jeffrey Fenn, to testify about substations.

Mr. Fenn testified that "[t]he primary item in a substation that defines it different[ly] from another facility is the transformer[,]" and he provided the National Electric Safety Code and the New IEEE Standard Dictionary of Electrical and Electronics Terms definitions of substation, each of which, in summary, defined

"substation" as an assemblage of equipment, including a transformer, through which energy is passed for switching and transforming power. Mr. Fenn testified that the Amtrak substation was within two miles of the project, and that it was a substation with three transformers. Finally, Mr. Fenn clarified that, when discussing substations that are characterized by the presence of a transformer, he was referring to "utility substations," as distinguishable from, for example, a water department substation. Freepoint also asked the zoning board to take administrative notice of the Rhode Island Public Utilities Commission enabling act definition of "public utility." *See* G.L. 1956 § 39-1-2(a)(20) (defining "public utility" as used in title 39 of the general laws to include, among other items, "every company operating or doing business in intrastate commerce and in this state as a railroad, street railway, [and] common carrier").

No evidence was presented that contradicted Mr. Fenn's testimony. However, after Freepoint's presentation, Richmond Town Solicitor Michael Cozzolino spoke on behalf of the town. The solicitor represented that "[i]t's the Town's position, the term 'substation' was intended to be limited to National Grid substations within the Town." To support this assertion, Mr. Cozzolino presented a DVD containing a recording of the town council meeting on July 25, 2017, at which the town council first passed § 18.34.030-A of the zoning ordinance; he also provided a map that was used at that meeting, which showed various utility substations in the Town of

- 6 -

Richmond. After viewing the video, the solicitor argued, "[I]f you listen to that, in conjunction with the maps that were submitted, it's clear that the Council intended for the utility substations to be limited to those three National Grid ones that were submitted with that particular zoning amendment."

Freepoint objected to the solicitor's comments, asserting instead that the meaning of the ordinance was clear on its face. Freepoint also took issue with the solicitor's characterization of the video from the town council meeting, arguing that (1) at no point did the town council modify the word "utility" by use of any language pertaining to National Grid, and (2) discussions about the utility substation requirement at that town council meeting had focused on the economic viability of projects. In a closed session after the hearing, the zoning board decided to defer decision on Freepoint's application.

Finally, in December 2019, the zoning board met to render a decision on Freepoint's application. Deliberations prior to the vote centered on the utility substation requirement—that is, whether the Amtrak substation qualified as a "utility substation" for purposes of § 18.34.030-A of the zoning ordinance. The zoning board voted on two motions: one motion to grant the special-use permit, and one motion to deny the special-use permit. The former garnered three out of five votes in favor of granting the special-use permit, while the latter garnered two votes in favor of denying the special-use permit. However, because the town's zoning

ordinance required a minimum vote of four in favor to grant a special-use permit, the motion to grant the permit failed and the application was denied.

Freepoint appealed the zoning board's decision to the Superior Court. Freepoint asserted that the zoning board's decision was clearly erroneous, arbitrary and capricious, and contrary to the law and the evidence. Freepoint alleged that the zoning board erred by (1) not applying the plain meaning of the ordinance, (2) erroneously considering evidence and arguments presented by the town solicitor, and (3) finding that the Amtrak substation was insufficient for purposes of § 18.34.030-A.

After briefing and arguments by the parties, the trial justice issued a decision in favor of Freepoint. The trial justice found that the zoning board decision was affected by error of law because the zoning board had looked beyond the plain and ordinary meaning of § 18.34.030-A, and that the zoning board's decision-making became "lost" on what the town council had intended when passing the ordinance. The trial justice also found that substantial evidence in the record demonstrated that the Amtrak substation fell within the plain meaning of "utility substation" under the ordinance. Finally, the trial justice found that there was no dispute that the other requirements of the special-use permit were met by Freepoint's application and that, accordingly, the matter should be remanded to the zoning board for issuance of the special-use permit.

The town petitioned this Court for writ of certiorari, seeking review of the Superior Court's decision, which this Court granted. The town assigns error only to the trial justice's finding that the term "utility substation" in the zoning ordinance is plain and unambiguous. Accordingly, we consider whether the trial justice erred in concluding that the phrase "utility substation," as used in § 18.34.030-A of the Town of Richmond's zoning ordinance, is clear and unambiguous.

**Statutory Interpretation**

"On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in [G.L. 1956] § 45-24-69." *New Castle Realty Company v. Dreczko*, 248 A.3d 638, 642 (R.I. 2021) (quoting *Iadevaia v. Town of Scituate Zoning Board of Review*, 80 A.3d 864, 870 (R.I. 2013)). Section 45-24-69(d), in turn, provides that the Superior Court "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact" but may "reverse or modify the decision if substantial rights of the appellant have been prejudiced" by a decision that, among other things, is "[a]ffected by * * * error of law" or is "[c]learly

- 9 -

erroneous in view of the reliable, probative, and substantial evidence of the whole record[.]" Section 45-24-69(d)(4), (5).

"We do not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *New Castle Realty Company*, 248 A.3d at 643 (quoting *Iadevaia*, 80 A.3d at 870). "However, this Court reviews issues of statutory interpretation *de novo*." *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008). "In this Court's *de novo* review, a zoning board's determinations of law, like those of an administrative agency, 'are not binding on the reviewing court; they may be reviewed to determine what the law is and its applicability to the facts.'" *Id.* (quoting *Gott v. Norberg*, 417 A.2d 1352, 1361 (R.I. 1980)).

"When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." *Ryan v. City of Providence*, 11 A.3d 68, 70 (R.I. 2011) (quoting *Ruggiero v. City of Providence*, 893 A.2d 235, 237 (R.I. 2006)); *see Zanni v. Town of Johnston*, 224 A.3d 461, 466 (R.I. 2020). "If the language of a statute or ordinance is clear and unambiguous, it is given 'its plain and ordinary meaning.'" *City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 500 (R.I. 2021) (quoting *Sauro v. Lombardi*, 178 A.3d 297, 304 (R.I. 2018)); *see Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 259 (R.I. 2011). "This is

particularly true where the Legislature has not defined or qualified the words used within the statute." *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011) (quoting *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005)). That said, "[a]mbiguity exists * * * when a word or phrase in a statute is susceptible of more than one reasonable meaning." *Id.*; *see Olsen v. DeMayo*, 210 A.3d 431, 435 (R.I. 2019).

The zoning ordinance at issue provided that "[t]he entire lot on which the solar energy system is located shall be within two (2) miles of a utility substation." Section 18.34.030-A. The town maintains that the phrase "utility substation" is ambiguous and that the trial justice's reasoning reaches an absurd result, in that it allows an Amtrak substation to satisfy the requirements of a solar energy system ordinance.

We disagree. The ordinance does not define or qualify the phrase "utility substation," but its meaning is plain and unambiguous, and the component words "utility" and "substation" are each words of common usage within the English language. The American Heritage Dictionary defines "utility" as "[a] commodity or service, such as electricity, water, *or public transportation*, that is provided by a public utility." The American Heritage Dictionary of the English Language 1908 (5th ed. 2011) (emphasis added). Amtrak, as a public carrier, plainly falls within this definition. *See* 49 U.S.C. § 24101(b) ("The mission of Amtrak is to provide

efficient and effective intercity passenger rail mobility consisting of high quality service that is trip-time competitive with other intercity travel options[.]").  Further, this ordinary meaning of the word "utility" conforms with state law, which defines "public utility" as including "every company operating or doing business in intrastate commerce and in this state as a railroad, street railway, [and] common carrier[.]" Section 39-1-2(a)(20).  The zoning board was aware of this definition in rendering its decision on Freepoint's application, due to Freepoint's request that the zoning board take administrative notice of this statute.  Moreover, the town does not contest the fact that Amtrak is a utility.

Additionally, the town does not contest that a "substation" is recognized by The Merriam-Webster Dictionary as "a subsidiary station in which electric current is transformed[.]" Merriam-Webster Online Dictionary (retrieved May 6, 2022, from https://www.merriam-webster.com/dictionary/substation).  Again, this definition of "substation" was before the zoning board, due to Freepoint's uncontradicted expert testimony that a substation is distinguishable from other facilities by the presence of a transformer.  Freepoint further emphasized to the zoning board that "substation" is a commonly used industry-standard term by presenting the National Electric Safety Code and the New IEEE Standard Dictionary of Electrical and Electronics Terms

definitions of substations, which, as described previously herein, were substantially the same as the definition provided by Mr. Fenn.

The town does not contest any of the foregoing, nor does it provide an alternative meaning for the phrase "utility substation," such that the phrase could be susceptible on its face of more than one meaning. *See Drs. Pass and Bertherman, Inc.*, 31 A.3d at 1269 ("Ambiguity exists * * * when a word or phrase in a statute is susceptible of more than one reasonable meaning."). Instead, the town seeks to circumscribe the word "utility" to a narrower subclassification than that which the word conveys on its face; the town argues that the word "utility" in the zoning ordinance means a *specific* utility, National Grid. The town's basis for this assertion, however, is that this interpretation effectuates the intent of the town council when it enacted the ordinance. Consequently, the town asserts, without support, that reading § 18.34.030-A to include Amtrak as a utility reaches an absurd result. *See Olsen*, 210 A.3d at 435 ("[U]nder no circumstances will this Court construe a statute to reach an absurd result.") (quoting *Mendes v. Factor*, 41 A.3d 994, 1002 (R.I. 2012)). This argument ignores longstanding precedent that, when faced with an otherwise plain and unambiguous ordinance, this Court will not seek out ambiguity where none otherwise exists. *Kastal v. Hickory House, Inc.*, 95 R.I. 366, 369, 187 A.2d 262, 264 (1963) ("We may not where no ambiguity exists search beyond the statute for a different meaning."); *see Grasso v. Raimondo*, 177 A.3d 482, 489 (R.I. 2018)

("[W]hen a statutory section is clear and unambiguous, we apply the plain and ordinary meaning of the statute and we need not delve into any further statutory interpretation.").

The town argues in the alternative that, even if the statute is clear and unambiguous, application of the plain meaning would result in "myopic literalism" that confines the phrase "utility substation" to a meaning that frustrates the intent of the town council. *See Sugarman v. Lewis*, 488 A.2d 709, 711 (R.I. 1985) ("[W]e will not allow ourselves to be blindly enslaved to the literal reading of statutes when to do so would defeat or frustrate the evident intendment of the [L]egislature.") (quoting *Town of Scituate v. O'Rourke*, 103 R.I. 499, 507, 239 A.2d 176, 181 (1968)).

We disagree. Undoubtedly, this Court's "plain meaning approach * * * is not the equivalent of myopic literalism, and it is entirely proper for us to look to the sense and meaning fairly deducible from the context." *5750 Post Road Medical Offices, LLC v. East Greenwich Fire District*, 138 A.3d 163, 167 (R.I. 2016) (quoting *Western Reserve Life Assurance Co. of Ohio v. ADM Associates, LLC*, 116 A.3d 794, 798 (R.I. 2015)). To do so, however, this Court "consider[s] the entire

statute as a whole[,]" and examines individual provisions "in the context of the entire statutory scheme[.]" *Id.* (quoting *ADM Associates, LLC*, 116 A.3d at 798).

Our review of the pertinent ordinance in its entirety does not change the meaning of the phrase "utility substation." Moreover, it does not, as urged by the town, circumscribe the word "utility" to mean a specific utility, National Grid. This Court "will refrain from 'read[ing] into a statute a requirement that the drafters omitted,' * * * and will do so only if 'the clear purpose of the legislation would fail without the implication[.]'" *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 561 (R.I. 2016) (first quoting *Commerce Park Associates 1, LLC v. Houle*, 87 A.3d 1061, 1067 (R.I. 2014), then quoting *Wehr, Inc. v. Truex*, 700 A.2d 1085, 1088 (R.I. 1997)).

The town points to no language in the ordinance to support its assertion that the legislative intent of the town council at the time it enacted the ordinance was to limit "utility" to National Grid, and our reading of the ordinance in its entirety reveals no such clear purpose. *See 5750 Post Road Medical Offices, LLC*, 138 A.3d at 167 ("When a statute is ambiguous, we must apply the rules of statutory construction and *examine the statute in its entirety to determine the intent and*

*purpose of the Legislature*.") (alterations omitted) (emphasis added) (quoting *In re Tetreault*, 11 A.3d 635, 639 (R.I. 2011)).

In light of the foregoing, it is apparent that the phrase "utility substation" is unambiguous on its face. Accordingly, we hold that the trial justice did not err in concluding that the phrase "utility substation" is unambiguous and therefore did not err in finding that the zoning board decision was affected by error of law.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court and remand the record of the case to that court.

**Justice Robinson, dissenting.** I respectfully dissent. I see ambiguity in the key term ("utility substation") whereas my colleagues do not. Several years ago, one of this Court's opinions quoted a poet who observed that "there are times when a court must engage in what a poet called 'the intolerable wrestle [w]ith words and meanings.'" *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 498 (R.I. 2011) (quoting T.S. Eliot, Four Quartets, "East Coker" pt. 2). In my view, this is just such a case.

This Court has repeatedly explained that ambiguity exists when language is reasonably susceptible of different constructions. *See, e.g., Middle Creek Farm, LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 751 (R.I. 2021) (noting

- 16 -

that a "statute is ambiguous if one of its words or phrases is susceptible to more than one meaning");[1] *see also Unistrut Corp. v. State Department of Labor and Training*, 922 A.2d 93, 99-100 (R.I. 2007); *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011).  The Court's opinion in the instant case holds that the meaning of the term "utility substation" is plain and unambiguous, and it observes that "the component words 'utility' and 'substation' are each words of common usage within the English language."  In my view, however, it is misleading in this instance to view "the component words" of a phrase in isolation from one another.

Significantly, the drafters of the ordinance chose not to define the term "utility substation."  *See Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 860 (R.I. 2008) (noting that "the drafters [of a local ordinance] did not define a 'Refuse transfer station'" and finding the controverted language of the ordinance to be "unclear and ambiguous").  I am convinced that we are confronted in this case with an instance of "inartful drafting of the pertinent * * * language,"

---

[1]  I agree with the majority that an ordinance is to be interpreted in the same manner as a statute.  *See City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 500 (R.I. 2021); *Murphy v. Zoning Board of Review of Town of South Kingstown*, 959 A.2d 535, 541 (R.I. 2008).  And I further agree that such interpretive issues are questions of law that should be reviewed in a *de novo* manner by this Court.  *City of Woonsocket*, 251 A.3d at 500.

which has rendered it plainly "susceptible of more than one reasonable meaning."[2] *Balmuth v. Dolce for Town of Portsmouth*, 182 A.3d 576, 585 (R.I. 2018) (internal quotation marks omitted). All would have been made simple if the ordinance had contained a definition as to what the drafters intended by using the term "utility substation." But that did not happen.

In my opinion, the ambiguity which I detect in the use of the term "utility substation" is not a mere "ambiguity in the metaphysical sense," nor is it the product of construing language "in a hypertechnical fashion;" it is rather the product of construing language "in an ordinary, common sense manner." *Paul v. Paul*, 986 A.2d 989, 993 (R.I. 2010) (internal quotation marks omitted). I note that the members of the Zoning Board, opining on what had been the Town Council's intent when drafting the ordinance, could not reach a unanimous understanding of the term "utility substation." Although the testimony of Jeffrey Fenn, the electrical

---

[2] I should add that I am unable to agree that the term "utility substation" in the zoning ordinance at issue has a clear and unambiguous meaning when one considers the *context* in which that term occurs. *See* Henry Willmer Jones, *The Plain Meaning Rule and Extrinsic Aids in the Interpretation of Federal Statutes*, 25 Wash. U. L.Q. 2, 3 (1939) ("[A]ny serious effort on the part of judges to discover the thought or reference behind the language of a statute must be based upon a painstaking endeavor to reconstruct the setting or context in which the statutory words were employed."); *see also Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1013 (7th Cir. 1984) (*en banc*) (Posner, J.) (remarking that "context, in the broadest sense, is the key to understanding language"); *see generally* Reed Dickerson, *The Interpretation and Application of Statutes* 103-06 (1975) (discussing the role of context in the interpretation of statutes).

engineering expert who testified on behalf of Freepoint Solar, expressed the view that the Amtrak substation could be classified as a "utility substation" because it has a transformer, there are material differences between the capabilities of the Amtrak substation and those of other utility substations that are supportive of the thesis that the Amtrak substation is not a "utility substation" within the meaning of the ordinance at issue. Specifically, as alluded to by one Zoning Board member, the Amtrak substation provides locomotive power and does not provide electricity.

Thus, the presence of such different interpretations of the term "utility substation" leads me to believe that this Court should not hold that the term is unambiguous but rather should delve deeper into the record, examine the context in which the term appears, and consider the audience towards whom this ordinance was directed. *See Nunes v. Town of Bristol*, 102 R.I. 729, 738, 232 A.2d 775, 780 (1967) ("[W]here the language [of an ordinance] is ambiguous or uncertain the court may take into consideration certain extrinsic matters which tend to throw some light on the legislative intent.").

It is further my opinion that, once one delves deeper into the record, it becomes clear that "utility substation" was not intended by the drafters to include an Amtrak substation. The map submitted at the Town Council meeting where the ordinance at issue was enacted shows only three National Grid substations and not any Amtrak substation. It was that map which the Town Council had before it when

it decided to enact the ordinance. And, in my opinion, that document (which was in the record before the Superior Court) speaks volumes as to the intent of the drafters. *See City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 500 (R.I. 2021) ("[W]hen it is determined that an [enactment] is unclear and ambiguous, this Court must look to the legislative intent behind the enactment. * * * In so doing, the [C]ourt may take into consideration certain extrinsic matters which tend to throw some light on the legislative intent.") (internal quotation marks omitted). For that reason, I would interpret the term "utility substation" as not being applicable to the Amtrak substation at issue.[3]

Accordingly, I record my respectful but unequivocal dissent from the majority's opinion in this case.

---

[3] I do not maintain that the extrinsic evidence upon which I rely in interpreting what I view as an ambiguous ordinance is instantly and obviously conclusive. However, in my opinion, when an ordinance is ambiguous, it must be interpreted on the basis of the best available evidence—and the map that was available at the time of drafting seems to me to be of that variety.

Additionally, I note that the trial justice and the majority opinion rely on the definition of "public utility" which appears in G.L. 1956 § 39-1-2(a)(20) and which includes a "railroad" in that definition. However, the ordinance in question does not adopt that definition.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Freepoint Solar LLC v. Richmond Zoning Board of Review et al. |
| **Case Number** | No. 2020-207-M.P.<br>(WC 20-6) |
| **Date Opinion Filed** | May 11, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Christine E. Dieter, Esq. |
| | For Defendant:<br><br>Karen R. Ellsworth, Esq. |